## STATE v. SAMUEL RAMSAY.

*Indictment—Disturbing a Religious Congregation—Evidence.*

1. On the trial of an indictment for disturbing a religious congregation, it was in evidence that the defendant, either just before or shortly after the beginning of the services, rose up in the church and began to speak on matters connected with his expulsion from the church, which had occurred a short time previously ; that the minister directed him to stop, when he declared he would be heard and persisted in speaking until he was removed from the house ; that he thereupon re-entered and resumed his speaking, notwithstanding repeated remonstrances from the minister, and by his conduct and voice so interrupted the services that the meeting was broken up ; *Held,* that upon this evidence the jury were warranted in returning a verdict of guilty.

2. On such trial, evidence as to "before what body the defendant was tried" was inadmissible ; also as to "how members of that church were tried and convicted ;" also as to the manner of defendant's expulsion and its propriety ; also as to whether the official board or the members of the church had, under its rules, authority to expel.

3. On such trial a witness introduced by the State testified on cross-examination that he had "taken the defendant to task for sowing the seeds of discord and spreading false views ;" *Held,* to be inadmissible to further inquire what those false views were.

4. On such trial, it was admissible for the State to ask a witness "if it was a custom in this church for an expelled member to get up on the Sabbath day, just before or at the beginning of the regular service and make known his grievances ?"

5. It is not necessary to constitute the offence of disturbing a religious congregation, that the congregation should be actually engaged in acts of religious worship at the time of the disturbance ; it is sufficient if they are assembled for the purpose of worship and are prevented therefrom by the acts of the defendant.

6. Where on such trial, the Court charged at the defendant's request "that the act of disturbance must be wanton, intentional and contemptuous" but added "that the acts would be wanton, if done without regard to consequences, that is, for some purpose of his own, and with intent to do them, whether he thereby disturbed the congregation or not ;" *Held,* not to be error.

STATE *v.* RAMSAY.

(*State Jasper*, 4 Dev. 323 ; *State* v. *Swink*, 4 Dev. & Bat. 358 ; *State* v. *Fisher*, 3 Ire. 111 ; *State* v. *Linkhaw*, 69 N. C. 214, cited, distinguished and approved.)

INDICTMENT for Disturbing a Religious Congregation tried at May Term, 1877, of WAKE Criminal Court, before *Strong*, J.

The case is sufficiently stated by THE CHIEF JUSTICE in delivering the opinion of this Court. Verdict of Guilty. Judgment. Appeal by defendant.

*Mr. A. M. Lewis* who prosecuted in the Court below appeared with the *Attorney General*, for the State.

*Mr. T. M. Argo*, for the defendant.

SMITH C. J.   The defendant is charge l with the offence of disturbing a religious congregation and obstructing public worship.

It was in evidence that a religious congregation under the ministerial charge of one Edwin Marcom, was accustomed to assemble for divine worship at a place known as Piney Grove Church; that on Sunday, the 13th of May, 1876, the congregation began to assemble and a number estimated by witnesses at from 10 to 30 were in the church and their minister in his place in the pulpit.

Some of the witnesses testified that services had already begun by the singing of a hymn; and others, that the congregation had been engaged in voluntary singing not under the direction of the minister, and that the regular hour for Sabbath services had not arrived.

The defendant, who had been a member of the church and had been about two weeks before expelled from its communion, rose up in the church and began to speak on matters connected with his expulsion, when he was told by the minister that he could not be permitted to do so, and must stop; that the defendant declared he would be heard, and persisted in speaking to those present, until some of the

28

members put him out of the house; that he re-entered immediately and resumed his speaking, in disregard of repeated commands and remonstrances from the minister, and by his disorderly conduct and noise so interrupted the exercises that the meeting was broken up and those present left the house and returned home.

Various exceptions were taken by the defendant to the rulings of the Court in admitting and rejecting evidence, only so much of which will be stated as is necessary to the exceptions being properly understood.

*Exception* 1. On the cross examination of Edwin Marcom, a witness for the State, he stated that the defendant had been a member of his church, but was not then a member, having been turned out about two weeks before. The defendant's counsel proposed further to inquire of the witness, before what body the defendant had been tried. The Solicitor objected and the inquiry was not permitted.

*Exception* 2. On the cross examination of Edwin Marcom, a witness for the State, he said he had taken the defendant to task for sowing the seeds of discord and spreading false views. The defendant's counsel asked what these false views were. The Solicitor objected and the answer was disallowed.

*Exception* 3. The defendant's counsel inquired of one of his own witnesses, how members of that church are tried and sentenced. On objection of the Solicitor the evidence was excluded.

*Exception* 4. Defendant's counsel proposed to ask of his own witnesses about a conversation between Marcom and the witness in reference to defendant's expulsion from church membership, and its propriety. On objection of the Solicitor the evidence was declared inadmissible.

*Exceptions* 5 and 6. The Solicitor asked a witness if it was a custom in this church for an expelled member to get up on the Sabbath day, just before or at the beginning of the

regular service and make known his grievances. This ques-
tion was objected to by defendant's counsel, but allowed to
be put and answered.

*Exception* 7. On the re-direct examination of defendant's
witness, his counsel inquired, if "the official board of the
members of the church had under its rules the authority to
expel." The question, objected to by the Solicitor, was ruled
out.

The exception to the evidence elicited in answer to the
inquiry whether any usage prevailed in the church, which
permits an expelled member, on the Sabbath day, at or just
before the regular services commenced, to discuss his griev-
ances before the congregation, is without just foundation.

The evidence tended to show that the interruption was
without pretext or excuse, and that the time and place
selected by the defendant to make known his complaints
were not only in themselves inopportune and improper, but
found no countenance in the practices of the church.

We are of the opinion that these rulings of the Court are
correct and that the exceptions are untenable. The evi-
dence offered by the defendant and excluded was altogether
irrevelant and calculated to mislead. Whether the defen-
dant was rightfully or wrongfully turned out of the church
—whether because of irregularity in the proceedings, he was
still a member of the body, or had ceased to be—were mat-
ters foreign to the issue to be tried. Whenever a religious
body is wantonly and intentionally disturbed and obstructed
in its worship of Almighty God, it is a misdemeanor, by
whomsoever done, and it is no defence that the party com-
mitting the act is a member of the congregation disturbed.

The Court was right also in not allowing an examination
into and a review of the action of the church judiciary, to
ascertain if it was regular and right. This is not a subject
of inquiry before the Court, and the examination was prop-
erly arrested.

We propose next to consider the matters of exception to the instructions given to the jury, as to what acts constitute the offence charged against the prisoner.

The Court charged the jury, that if the congregation were assembled for religious worship and five or more persons had met and were engaged in acts of devotion by singing and praying, shortly before the usual Sabbath exercises conducted by the minister began, and while waiting for him to begin, and the defendant did the acts of disorder and interruption deposed to by the witness, for the purpose of disturbing the congregation; or if he did those acts without authority according to the custom of the congregation, with intent to make himself heard, regardless of the disturbance thereby made; or if he did the acts mentioned, to prevent the regular religious service for which the congregation was then assembling; or without the sanction of usage in the church with intent to make himself heard though he might thereby disturb the congregation, and if he did thereby disturb the congregation, he would be guilty of the offence charged.

The defendant's counsel asked the Court to charge that to constitute the offence, the congregation must when disturbed be actually engaged in acts of religious worship. The Court refused this instruction, but told the jury that if they were assembled for the purpose of worship and were prevented therefrom by the disturbance it would be sufficient as already charged.

The defendant's counsel asked this further instruction: "that the act of disturbance must be wanton, intentional and contemptuous."

The Court so charged, but added "that the acts would be wanton, if done without regard to consequences, that is, for some purpose of his own and with intent to do them whether he thereby disturbed the congregation or not."

There can be no serious doubt, if the facts assumed in the

charge were satisfactorily proved to the jury, (and the verdict so declared) that the defendant has been guilty of a misdemeanor. No one has a right to interfere with the religious devotions of others, by making known his own grievances, real or fancied, in so boisterous a manner as to disturb and finally break up the meeting altogether, and thus frustrate the object for which it was held; and he cannot be heard to say he did 'not intend the obvious and necessary consequences of his conduct. If the act is done intentionally and without excuse, it is a wanton invasion of the rights and privileges guaranteed in § 26 of the Declaration of Rights of the Constitution of the State, and sustained by an enlightened public sentiment.

And we think the protection of the law is extended as well to the congregation when assembled in their house of worship and about to begin the regular exercises, as when, it is actually so engaged, and that acts which *prevent those* exercises and break up the meeting so that they cannot be had at all, equally with those which disturb the religious devotions of the assembly after they begin, are prohibited by law. We cannot see any just reason for distinguishing between the two cases. We refer briefly to the few adjudications on the subject in this State to which our attention has been called in the argument. In *State* v. *Jasper*, 4 Dev. 323, the Court declares it a misdemeanor to interrupt and disturb a religious meeting " by talking and laughing in a loud voice " and " making ridiculous and indecent actions and grimaces, during the performance of divine service."

So the Court declares it to be an indictable offence to disturb a congregation engaged in public worship, though it be not in a church, chapel, or meeting house specially set apart for the purpose. *State* v. *Swink*, 4 Dev. and Bat. 358. But it is not a misdemeanor if the disturbance takes place after the religious exercises are over and when the congregation has entered upon secular business. *State* v. *Fisher*, 3

Ire. 111. So if the interruption arises from loud singing by one who is honestly participating in the service and intends no disrespect, it is not punishable by indictment. *State* v. *Linkhaw*, 69 N. C. 214.

The principle which underlies the adjudications in this State is obviously the right of every religious body to meet and engage in the worship of God, in the language of our Constitution, " according to the dictates of their own consciences," and to be protected by law in the enjoyment of that right. It can make little difference whether the liberty of public worship is denied by conduct which breaks up and disperses a body met for religious purposes and just about to enter upon its duties ; or the congregation is *interrupted* only during its devotions, and not wholly prevented from performing them.

It is not open to dispute whether the acts of the defendant were a disturbance in the sense that subjects him to a criminal prosecution, and that the jury were warranted in so finding, when they had the admitted effect of breaking up the congregation and frustrating altogether the purposes for which it had convened.

There is no error. Let this be certified.

PER CURIAM. Judgment affirmed.