STATE v. WILLIAM SNEED.

*Convicts—Power to Farm Out—Escape.*

1. The provisions of The Code, §3448, forbidding the hiring out of convicts, unless the Court before which such prisoner was convicted shall so authorize in its judgment, only applies to farming out convict labor to individuals and corporations, and does not extend to cases of convicts employed on public works, and under the supervision and control of public agents.

2. So where a prisoner confined in the public jail was used by the county authorities to work on the public roads, the person in charge of him was guilty of an escape for negligently allowing such person to make his escape.

(*State* v. *Johnson*, at this Term, cited and approved; *State* v. *Shaft*, 78 N. C., 464, cited and distinguished).

INDICTMENT for an escape, tried before *Meares, Judge,* and a jury, at August Term, 1885, of the Criminal Court of MECK-LENBURG county.

The defendant is charged with negligently permitting the escape of a prisoner, sentenced to imprisonment in the county jail, and under his care and control as guard. The jury rendered a special verdict, and find as follows:

At August Term, 1883, of the Inferior Court of Mecklenburg county, Samuel Hutcheson was tried and convicted of larceny, and was sentenced to be imprisoned in the county jail, for the term of three years, at hard labor. He was thereupon committed by the sheriff to the jail, and before his sentence was terminated, he was removed by the county commissioners to a stockade, for the security of prisoners employed in working the public roads, provided for that purpose by the commissioners. The convict was placed in custody of the superintendent of the stockade, who was hired to oversee prisoners there confined, and to supervise the work on the public roads, as directed by the commissioners, but was not under bond, nor a deputy of the sheriff, or a constable. The defendant was employed by the superintendent, with the commissioners' consent, as one of the guards at the stockade, to guard prisoners placed in charge of the superintendent, at a monthly salary. The convict had become what is known as a "trusty," and had been allowed to pass in and out of the stockade at all times, without hinderance.

In June, 1885, the then acting superintendent, who had succeeded the former appointee, on leaving the stockade in the evening, with defendant in charge, specially directed the defendant, to let no one pass in or out of the enclosure, without his own permission. On the defendant's saying such a course would be hard on the prisoners, the superintendent replied, that he must obey the order. During the night, the convict was allowed by the defendant to pass out at his request, and on his saying he would be back in a minute, but did not return, and thus made his escape.

Upon the foregoing, the substantial facts found by the jury, the Court was of opinion that the defendant was guilty, and so adjudged, imposing a fine of fifty dollars. From this ruling the defendant appealed.

*Attorney General,* for the State.
*Mr. W. P. Bynum,* for the defendant.

SMITH, C. J., (after stating the facts).  The Act of March 6th, 1867, ch. 196, without the concluding *proviso* as found in The Code, §3448, was in force when the case of the *State* v. *Shaft*, 78 N. C., 454, was decided, at February Term, 1878, and in which it is held, that a prisoner, undergoing a sentence of imprisonment in the county jail for six months, for the offence of fornication and adultery, could be lawfully farmed out, and hired to his wife.  In the opinion, RODMAN, J., makes the suggestion, in view of the possible mischief of a provision, unrestrained in its terms, and which authorized the employment of convict labor "for *individuals* or corporations;" that the Legislature might see fit to amend the law, by leaving it to the Judge to say, in his sentence, whether the prisoner may be hired out or not; or by allowing the hiring, only when the prisoner shall be in prison for non-payment of a fine.

The suggestion seems to have attracted the attention of the General Assembly, and in the amendatory Act of March 13, 1879, ch. 218, this clause was added, as a third *proviso:* "It shall not be lawful to farm out any such convicted person, who may be imprisoned for the non-payment of a fine, or as punishment imposed for the offence of which he may have been convicted, unless the Court before whom the trial is had, shall in its judgment so authorize."  The Code, §2448.

This proviso must therefore, have been intended, as argued by the Attorney General, to apply and be confined to the farming out of convict labor to "individuals or corporations," the danger of abuse of which power, conferred without restraint, was made manifest in the case referred to.  It does not extend to labor employed upon public works, and under the supervision and control of public agents.

The next two sections look to a similar employment of convicts in the penitentiary, under a written contract with the county and municipal authorities, and while they are to "be fed, clothed and quartered while in such service," by the board of directors or managers of the penitentiary, as in the case of the

hiring of convicts to railroad companies, it is expressly provided, that if any person, charged in any way with the control or management of such convicts, shall negligently permit to escape, or shall maltreat them, every person so offending shall be guilty of a misdemeanor," &c., §3450.

While this provision primarily applies to escapes of convicts committed to the penitentiary, and employed by the county or municipal authorities in public works, it is in our opinion, but declaratory of a principle equally pertinent to convicts taken from the county prison, and placed in charge of guards or other superintending county or municipal officers. It is in each, a breach of public duty, and as much so in reference to the one as to the other class of convicts, allowed negligently to make their escape. The prisoner was in the lawful and immediate custody of the defendant, whose duty was to maintain that custody, and he is amenable to a criminal prosecution for wilfully allowing his escape. 2 Whar. Cr. Law, §2609.

We shall not repeat what has been said in *State* v. *Garrett Johnson, ante.,* in considering a similar accusation against a guard for permitting an escape of a prisoner, whose good conduct had raised him to the dignity of being a "trusty," as in the present case, and who had in like manner betrayed the confidence reposed in him, and forfeited his newly-acquired good name. The escape here, was the result of the direct voluntary act of the defendant, and in disregard of the command of his superior.

There is no error. Let this be certified.

No error. Affirmed.