## STATE v. WILLIAM JACOBS.

*Disturbing a Religious Congregation.*

There were two parties of religious worshipers, each claiming the same church building, and each of whom posted up notices forbidding the other to enter upon the premises. On a certain Sabbath the defendant and his associates took possession, and when the leader of the other party and his associates came up, the defendant, and others aiding him, forbade and prevented their entering the church or worshiping therein. Out of this controversy sprung an indictment of the defendant for disturbing a religious congregation: *Held,* that it was error to exclude evidence, offered on the part of defendant, to show the *bona fides* of his conduct in taking possession of the church.

CRIMINAL ACTION, tried before *Philips, J.,* at May Term, 1888, of ROBESON Superior Court.

The indictment against the defendant, found at January Term of Robeson Superior Court, charges that the defendant, " being a person regardless of the solemnities of the public worship of God," * * * did, in said county, " wilfully interrupt and disturb a certain assembly of people, there

met for the worship of God, at a certain church, known as New Hope Church, in the county aforesaid, by then and there forbidding the said congregation to enter the house of worship, or hold a meeting therein, by then and there preventing the said congregation from entering into the said house of worship, to the great injury," &c.

Upon this arraignment the defendant entered a motion to quash the indictment, for that the facts set out do not constitute an indictable offence, the determination of which the Judge reserved, until the evidence was heard, and afterwards denied.

The defendant then put in his plea of not guilty, upon the trial of which he was convicted by the jury, and from the judgment thereon appealed.

The other essential facts are stated in the opinion.

*The Attorney General* and *Mr. E. C. Smith,* for the State.
No counsel for the defendant.

SMITH, C. J. The principal witness examined for the State, Calvin Lowry, testified substantially as follows: On the first Sabbath of the past year, a stated time for holding religious services in the church known as New Hope Church, he, with a wagon in which were his family of ten or twelve persons, came to the house for religious worship, and found it surrounded with a rail fence three or four rails high, and found the defendant there, who had constructed a small room of about four feet square in one of the corners of the house.

That on halting, defendant ordered the driver of the wagon to keep on, but by witness' direction he halted, and witness got out and started to the house, when he was met by the defendant and forbidden by him to enter, and was prevented from entering and prevented from having the religious services.

That there were present at this time from fifty to a hundred persons, who had come to attend, and were compelled to hold their meeting a short distance off in the open air, at which, after singing and praying, and giving out future appointments, the meeting was closed, and those in attendance dispersed.

That the place had been used for public worship for seventy-five or one hundred years, two houses built for the purpose had rotted down, one had been burned, and the present one put up in its place.

That there were others with the defendant who were in the small corner room, which he said was his residence, and was at the open and unclosed part of the house.

That defendant had posted notices forbidding any one to enter the church, as had been done by the other opposing claimants, forbidding those of defendant's party to enter.

This testimony was in its material facts corroborated by other witnesses for the State, who were examined in reply to defendant's testimony.

The defendant, examined on his own behalf, testified in substance: That he had forbidden the said Calvin Lowry to go upon the premises, telling him the land belonged to witness, and he so believed.

He was then asked by his own counsel to state why he did this, the purpose of the inquiry being to ascertain if the disturbance was wanton, wilful and contemptuous. The question was disallowed, the proposed evidence ruled inadmissible on the Solicitor's objection, and the defendant excepted.

Resuming, the witness said he told Calvin that there had been confusion enough, and witness wanted him to go on and let us alone, as he was disturbing our congregation; five or six persons standing around heard it.

That Calvin then went away, took a chair out of his wagon, sat down and began to sing, while witness and those with him went to the school-house and there had their meeting.

That at the time of the conversation in which Calvin was forbidden to enter, none but himself and family had come—not more than a dozen had arrived, but the Sunday-school scholars came afterward, and thus increased the number, and witness was in possession, nor had witness words with any one else except Calvin.

That witness had himself been preaching in the house, and there was no more disturbance than such as resulted from his prohibiting, and thereby preventing, the use of the church that day by him and his party.

That witness and his set held meetings in the school-house, and he used the small inclosure in the church as a place for prayer, when it was convenient, three or four times a week.

In this testimony, of which the above is a summary, and relates to what occurred, the defendant is sustained by another witness, and it suffices to show what facts transpired to support the charge of disturbance of a religious meeting, and to warrant the verdict.

Waiving the question of the sufficiency of the indictment in alleging a criminal intent, and of the evidence offered in its support, about which, as unnecessary, we abstain from expressing an opinion, we think there is error in excluding the testimony offered to show the *bona fides* of the action of the defendant, in asserting his supposed right of property in taking possession of the premises and excluding those who had come to worship.

The gist of the offence charged is the disturbance of a religious congregation, in refusing to let them enter and engage in religious services, as it was accustomed to do, within the church building. There was no interruption in the service held a short distance off under the tree, nor before, further than that produced by the demand and the attempt to enter, not attended with violence, and the defendant's refusal to allow it.

This refusal is the criminal act imputed to the defendant and proved by the witness, and none other, by which the intended religious services in the house were frustrated, and partially were conducted elsewhere.

The conduct of the defendant was lawful, if he had a title to the premises; and if he had not, but *bona fide* believed he had such right to the premises, and acted under that belief, however inopportune the time and manner of asserting it, he did not incur liability to a public prosecution, even though many persons had come to worship there, and were not allowed to do so. To amount to a misdemeanor, the disturbance of the contemplated religious exercises must not only be actual and voluntary, but *wanton*, proceeding from a reckless disregard of the time and place. and an indifference to the rights of others, as interpreted in *State* v. *Ramsay*, 78 N. C., 448, where the subject is discussed.

The ruling in this case has been invoked in support of the present prosecution, as establishing the proposition that the prevention of persons arrived at a place of public worship, and about to assemble for that purpose, when prevented from doing so by another, are *disturbed* and the criminal act committed. But the case does not go thus far There the congregation had formed within the church, and were awaiting the beginning of the regular service by the minister, who was present in the pulpit, and, according to some of the witnesses, a voluntary singing, a prelude thereto, was going on. The defendant, who had been expelled, began to speak about the matter of his expulsion, when he was told he could not proceed, and defiantly did proceed until put out of the house; and, re-entering, resumed his speaking, in disregard of repeated commands and remonstrances from the minister, and by his noise and disorderly conduct broke up the meeting, and the members present left and went home.

This was declared to be the misdemeanor charged. Besides the actual disturbance of a *religious congregation*, not a *con-*

103—26

*gregation of religious persons* engaged in transacting secular business of the denomination, held ,not to be an indictable offence in *State* v. *Fisher*, 3 Ired., 111, there must be in association with the act a criminal intent—that is, an intent to do, knowing the consequences, those acts which necessarily tend to disturb and do disturb such religious congregations in their worship, or to break it up and prevent the proposed religious services.  If the intent does not co-exist with the fact of disturbance, but is the sole result of an honest claim of property and of a right to possess and hold it, no ground is afforded for a criminal prosecution, unless it is asserted and maintained in a violent and disorderly manner, and in excess of the just and firm maintenance of the asserted claim.  The Court below put a different view, and refused to hear any evidence explanatory of defendant's conduct and showing his good faith, sustaining the exceptions of the State on the grounds " that the acts must speak for themselves, and the defendant cannot be heard to say what was meant by his conduct."  It is very true that the defendant could not be permitted to vary the nature or dispute the obvious and necessary results of what he did, as ruled in *State* v. *King*, 86 N. C , 603 ; *State* v. *Voight*, 90 N. C., 741 ; *Moore* v. *Cameron*, 93 N. C., 51, and which follows and sustains *Cheatham* v. *Hawkins*, 80 N. C., at page 161 ; but it is otherwise, where the act alleged to be criminal is done in the exercise of a supposed right, not extending beyond reasonable limits, and becomes a misdemeanor only when associated with a wanton intent, as has been already defined.  The interruption charged consists, not in tumultuous conduct or violence or menace of violence, in manner or word, but simply in withholding from present use the church in which the persons assembling had come to engage in worship; and surely, if this was done, *as an owner*, rightful or not, it would not constitute the grounds for a criminal prosecution, as it would not for a civil action, unless at the instance of the

party having title  This is fully warranted by *State* v. *Hanks,*
66 N. C., 612; *State* v. *Ellen,* 68 N. C., 281; *State* v. *Hause,* 71
N. C., 518; *State* v. *Crosset,* 81 N C., 579; *State* v. *Ramsay,*
*ante.*

From the evidence it seems that there were two parties
claiming the church, each of whom had posted up notices
forbidding the other to enter upon the premises, and that
the defendant, with his associates, took prior possession, and
when the leader of the other party came, he and his associ-
ates were unable to enter, and out of this controversy springs
the present prosecution, and accordingly each claims him-
self to have been disturbed by the other.

The exclusion of the evidence tendered, as we understand
the proposal to prove the *bona fides* of the defendant's con-
duct in taking and maintaining possession, is an error entit-
ling the defendant to a *venire de novo,* and it is so adjudged.

Error.                                *Venire de novo.*