May Term, 1849.

GRAVES
v.
THE STATE.

---

GRAVES and Others *v.* THE STATE.

The power of legislation in relation to fugitives from labor rests exclusively in congress, and the laws of this state prescribing the mode of arresting such fugitives escaping from other states, are unconstitutional.

Monday,
June 4.

ERROR to the *Elkhart* Circuit Court.

SMITH, J.—This was an indictment for a riot against *Joseph A. Graves, Elisha W. Coleman,* and *Hugh P. Longmore.* The defendants pleaded not guilty, and upon the trial the issue was found for the state. Motions in arrest

of judgment and for a new trial having been overruled, a judgment was rendered upon the verdict by which the defendants were each sentenced to pay a fine of 30 dollars.

The testimony and the instructions given by the Court to the jury are set out in a bill of exceptions. It appears that the alleged riot was occasioned by the proceedings of the defendants in arresting a negro as a fugitive slave, and who was claimed by *Graves* as his property. The arrest was made under the authority of a warrant issued by a justice of the peace. The noise and tumult which gave to the affair the characteristics of a riot, appear to have been occasioned by the interference of others with the view of preventing the defendants from forcibly taking the negro before the magistrate. The negro was finally taken before a justice of the peace, who discharged him, on motion, on the ground that the warrant for his arrest was insufficient.

The Court instructed the jury, substantially, that the statute of this state, providing that the person having a claim to the services of a fugitive from labor, due in another state and escaping into this state, may go before the clerk of a Circuit Court, and, upon proper affidavit, such clerk shall issue his warrant authorizing the arrest of such fugitive, and his conveyance before any justice of the peace or judge of the Circuit or Supreme Court, is not in contravention, either of the constitution of the *United States* or the laws of congress made pursuant thereto, and is, therefore, constitutional and binding on all persons within the state; that, in this case, the only question for consideration was as to the legality of the arrest; that the warrant under which the defendants acted, being issued by a justice of the peace, was wholly void and afforded them no protection whatever; and that they had no right to proceed without such warrant as is provided for by the statute of the state, unless they obtained forcible possession of the fugitive.

The third section of the act of congress, approved *February* 12th, 1793, reads as follows:

"*And be it further enacted,* That when a person held to labor in any of the *United States* or in either of the territories north, west, or south, of the river *Ohio,* under the laws thereof, shall escape into any other of said states or territories, the person to whom such labor or services may be due, his agent, or attorney, is hereby empowered to seize or arrest such fugitive from labor, and to take him or her before any judge of Circuit or District Courts of the *United States,* residing or being within the state, or before any magistrate of a county, city, or town corporate, wherein such seizure or arrest shall be made, and upon proof to the satisfaction of such judge or magistrate, either by oral testimony or affidavit taken before and certified by a magistrate of any such state or territory, that the person so seized or arrested doth, under the laws of the state or territory from which he or she fled, owe service or labor to the person claiming him or her, it shall be the duty of such judges or magistrates to give a certificate thereof to such claimant, his agent, or attorney, which shall be sufficient warrant for removing the said fugitive from labor to the state or territory from which he or she fled."

There has, no doubt, been much difference of opinion with regard to the constitutionality of the above act and upon questions arising from its conflict with state laws, passed, like that of our own state, with the view of prescribing the mode by which the provision of the constitution of the *United States* upon this subject shall be carried into effect. The disputed questions applicable to the present case, have, however, been formally decided by the Supreme Court of the *United States,* a tribunal having undoubted jurisdiction so to decide them in the last resort, and whose decisions we are, therefore, bound to receive as the supreme judicial exposition of the law by which proceedings in cases of this kind are regulated. The case of *Prigg* v. *The Commonwealth of Pennsylvania,* 16 Peters' R. 539, was an indictment against the plaintiff in error, for forcibly carrying away from the county of *York,* in *Pennsylvania,* to the state of *Maryland,* a negro woman,

named *Margaret Morgan*, with the design and intention of her being held and sold as a slave, contrary to the statute of *Pennsylvania*, passed the 26th of *March*, 1826. Judgment was rendered for the commonwealth, and the case was carried to the Supreme Court of the *United States*, where the question involved received a thorough investigation.   *Prigg*, as the agent of *Margaret Ashmore*, who claimed the services of the said *Margaret Morgan* as her slave, having obtained a warrant from a justice of the peace in *York* county, had caused the said *Margaret Morgan* to be arrested and carried before the magistrate, who refused to take cognizance of the case, and thereupon *Prigg* carried her, and her children, into *Maryland* and delivered them to *Margaret Ashmore*.

The opinion of the Court was delivered by judge *Story*, and it was decided, *inter alia—*

That the constitution of the *United States* secures to the owner of a fugitive slave, the same right to seize him in a state to which he has escaped or fled, that such owner had in the state from which such slave escaped;

That a claim to a fugitive slave is a controversy in a case " arising under the constitution of the *United States*," under the express delegation of judicial power given by that instrument, and that congress may call that power into authority, for the purpose of giving effect to the right, and to prescribe the mode and extent to which it shall be applied, and how, and under what circumstances the proceedings shall afford a complete protection and guaranty of the right;

That the provisions of the act of congress of the 12th of *February*, 1793, on the subject of fugitive slaves, covers that subject and points out all the modes of attaining the object in view, which congress had, as yet, deemed expedient and proper; and that the legislation of congress, if constitutional, must supercede all state legislation, on the same subject, and, by necessary implication, prohibit it;

 That the power of legislation, in relation to fugitives from labor is exclusively in the national legislature; and

when congress has exclusive power over a subject, it is not competent for state legislation to add to the provisions of congress on that subject;

That the act of the 12th of *February*, 1793, relative to fugitive slaves, is clearly constitutional in all its leading provisions, and, indeed, with the exception of that part which confers authority on state magistrates, is free from reasonable doubt or difficulty; and as to the authority so conferred on state magistrates, while a difference of opinion existed in different states as to whether state magistrates were bound to act under it, no doubt was entertained by the Court that state magistrates might, if they chose, exercise such authority, unless prohibited by state legislation.

In the later case of *Jones* v. *Vanzandt*, 5 Howard, 215, which originated in the state of *Ohio*, it was urgently contended that, as to states formed out of the territory northwest of the *Ohio* river, the act of congress of *February* 12th, 1793, was invalidated by the ordinance of 1787; but it was held that the act was not repugnant to the ordinance, and its constitutionality was again affirmed.

As the instructions given by the Circuit Court in the present case are clearly at variance with the doctrines thus established, and which, while remaining unreversed we are bound to recognize as the supreme law of the land, we cannot do otherwise than pronounce the instructions erroneous.

*Per Curiam.*—The judgment is reversed. Cause remanded for a new trial.

*O. H. Smith*, for the plaintiffs.