JOHN A. MOORE et. al v. P. C. CAMERON et. al.

*Pleading— Contract—Interest— Usury—Penalty.*

1. Under the present system of practice, there being but one form of action, it is the office of the complaint to set forth *the facts* upon which the plaintiff's *right* to relief is based, and if they are adjudged sufficient the Court will direct the appropriate *remedy*.

2. P. borrowed from C. $5,000, to be repaid at the expiration of five years, and bearing interest at 8 per cent., payable semi-annually. He executed his bond for the principal sum, and at the same time ten other bonds representing in amounts and dates of maturity the successive instalments of interest. It was provided in the principal bond that a failure to pay any one of the interest bonds when due should make the principal demandable *eo instanti*. These bonds were further secured by mortgage, and default having been made in the payment of one of the interest bonds, the lands were sold, and a controversy having arisen between C. and junior mortgagees as to the application of the proceeds ; *It was held*, that the contract was not usurious, nor were the interest bonds in the nature of a penalty, but being a provision for the prompt payment and convenient collection of the interest, the moment the principal sum and accrued interest were satisfied, the remaining bonds were discharged.

(*Cheatham* v. *Hawkins*, 80 N. C., 161 ; *State* v. *Voight*, 90 N. C., 741 ; *Jones* v. *Mial*, 82 N. C., 252, and *Moore* v. *Hylton*, 1 Dev. Eq., 429, cited and approved).

This was a CIVIL ACTION tried before *Graves, Judge*—a trial by jury having been waived—at Spring Term, 1885, of the Superior Court of HALIFAX county.

This action is for an account of the trust funds received by the defendant Peebles, upon a sale by him as trustee of land conveyed by plaintiffs, Mungo P. Purnell and wife Mary, to secure an indebtedness due to Mildred C. Cameron, intestate of the defendant Paul C. Cameron, and to recover an alleged excess above the sum necessary therefor, by the plaintiffs, Angelo Garibaldi, assignee, and the said Mary, who are secured in subsequent assignments of the same land to secure debts due by said Mungo P. to them.

The facts which, by consent of counsel of both parties, were submitted to the Judge for his finding, a trial by jury being waived, are ascertained and stated, so far as material to the controversy, to be these:

1. On the 22nd day of March, 1881, one Mildred C. Cameron loaned to the plaintiff, M. P. Purnell, five thousand dollars, for which he executed and delivered to her the following described bonds:

One bond in the sum of five thousand dollars payable January 1st, 1886. Said bond reads as follows:

" $5,000.00.

On the first day of January, eighteen hundred and eighty-six (1886), we and each of us owe and promise to pay to Mildred C. Cameron, or order, the sum of five thousand dollars, it being for money loaned, the interest on which is evidenced by coupon bonds of even date herewith, and if said interest bonds, or any one of them are not paid at maturity, then this bond shall *eo instanti* become due and payable. As witness our hands and seals, this March 22d, 1881.

M. P. PURNELL, [seal].<br>W. T. PURNELL, [seal]."

Witness,

R. B. PEEBLES.

One bond for $200.00 payable September 22d, 1881.
"   "   "   110.00   "   January 1st, 1882.
"   "   "   200.00   "   July 1st, 1882.
"   "   "   200.00   "   January 1st, 1883.
"   "   "   200.00   "   July 1st, 1883.
"   "   "   200.00   "   January 1st, 1884.
"   "   "   200.00   "   July 1st, 1884.
"   "   "   200.00   "   January 1st, 1885.
"   "   "   200.00   "   July 1st, 1885.
"   "   "   200.00   "   January 1st, 1886.

All of said bonds bearing date March 22d, 1881, and, with the exception of the five thousand dollar bond, were given as coupon bonds for interest at eight per centum accruing semi-annually upon the aforesaid loan of five thousand dollars. Said coupon bonds read as follows:

$200.00.

On the 1st day of January, 1883, we and each of us owe and promise to pay to Mildred C. Cameron, or order, the sum of two hundred dollars, it being the interest on five thousand dollars at the rate of eight per centum per annum from the first day of July, 1882, to January 1, 1883. If this bond is not paid at maturity it is to draw interest from then till paid at the aforesaid rate. As witness our hands and seals this March 22d, 1881.

> M. P. PURNELL, [seal].
> W. T. PURNELL, [seal].

Witness,

R. B. PEEBLES.

To secure the payment of said bonds, the said Mungo P. Purnell and wife, at the time of their execution and as a part of the same contract, made and delivered to the defendant Peebles, a deed in trust, conveying to him in fee the tract of land before mentioned of twelve hundred and seventy-five acres therein described and called the "Marshland" tract, with power of sale in case of default in the punctual payment of each bond as it became due, containing, among others not needful to mention, the following clause:

"But if either one of said bonds is not paid at the time it becomes due, then, *eo instanti*, all the rest of said bonds shall become due and payable and the said R. B. Peebles shall be authorized and empowered to sell said land at public auction to the highest bidder for cash, either on the premises or at the court-house door in the town of Halifax, after advertising the same at the said court-house door and four other public places in said Halifax county for the period of thirty days, and convey to the purchaser a fee-simple title, and out of the proceeds of sale retain five per cent. commissions on amount of sale, pay the principal and interest due on said bonds, and the balance, if any, pay to the said M. P. Purnell, his heirs and assignees."

3. Thereafter and on same day, the plaintiffs, Mungo P. Purnell and wife, executed and delivered another mortgage or deed of trust, conveying the same tract of land to secure a debt of $3,339.22, evidenced by bond, payable one year after date (March 22d, 1881), and with eight per centum interest from date, which bond, on the 15th day of December, 1881, became the property of the plaintiff Angelo Garibaldi.

At same time said Mungo P. Purnell executed and delivered another mortgage or deed of trust conveying the same tract of land, to secure a debt due the plaintiff Mary M. Purnell, for $730.00, with eight per centum interest from March 22d, 1881.

4. All of the aforesaid mortgages or deeds of trust were duly recorded, the one to the defendant Peebles first, and the other two thereafter and at the same time.

· 5. At Spring Term, 1883, an action was instituted to foreclose the two conveyances last above mentioned, and at said term it was, among other things, adjudged that the plaintiff Angelo Garibaldi recover of Mungo P. Purnell $4,049.49, with eight per cent. interest on $3,339.32 from March 19th, 1883; that said M. P. Purnell was also indebted to Mary M. Purnell in the sum of $817.24, with six per cent. interest from March 19th, 1883; that said amounts were secured by contemporaneous trusts upon the lands described in the aforesaid deeds of trust, and should share *pro rata* in the fund that should arise from the sale of said land; that the said M. P. Purnell pay the said Garibaldi and the said Mary M. Purnell their aforesaid debts on or before the first day of August, 1883, and that in default of such payment the said M. P. Purnell and Mary M. Purnell should be forever barred of all estate or equity of redemption in and to said land, which should be sold at public auction for cash at the court-house after due advertisement by John A. Moore, commissioner therein appointed for that purpose.

6. The defendant Peebles, by virtue of the powers conferred upon him in the aforesaid deed to him, and by reason of the failure of the plaintiff Mungo P. Purnell to pay the coupon

bonds aforesaid, maturing January 1st, 1883, and July 1st, 1883, the said Purnell having previously thereto paid the coupon bonds aforesaid maturing September 22d, 1881, January 1st, 1882, and July 1st, 1882, sold the tract of land conveyed by said deed at public auction for cash, after due advertisement, on the 30th day of July, 1883, at which sale the defendant Paul C. Cameron became the purchaser at the price of six thousand seven hundred and twenty-five dollars, but assigned his bid to one John T. Gregory. Gregory paid Peebles in settlement of said bid three thousand dollars in money, and for the balance thereof executed two bonds, one for $1,862.50, payable July 30th, 1884, with eight per cent. interest, and one for $1,862.50, payable July 30th, 1885, with eight per cent. interest. Said bonds were paid by said Peebles to the defendant Paul C. Cameron, as administrator of Mildred C. Cameron, deceased, and accepted by him as money, and are perfectly solvent; he also paid Cameron, administrator, $2,675.00 in money, retaining $325.00 himself in money, to pay his commissions (five per cent.) and other costs and expenses of sale. His commissions, with the other costs and expenses, amounted to $350.00.

7. Mildred C. Cameron died prior to said sale, intestate, and the defendant Paul C. Cameron qualified as her administrator.

8. Immediately after the sale by the defendant Peebles, the plaintiffs demanded of him that he pay the plaintiffs Garibaldi and Mary M. Purnell or the plaintiff Jno. A. Moore, the surplus of the proceeds thereof, over and above what was required to pay off the aforesaid debt of Mildred C. Cameron, his commission and the other charges and costs of making said sale, and which surplus they claimed amounted to about $891.00, but he refused so to do, claiming that there was no surplus.

9. At the time of the sale the property would not have commanded at a cash sale more than $5,000.00 from any person present at the sale except from the purchaser Paul C. Cameron.

10. The defendant Peebles paid over to his co-defendant Cameron, administrator, the notes and money proceeds of the

sale, less his charges for expenses and commissions, soon after the sale and before the institution of this suit; but after demand had been made upon him by the plaintiffs as aforesaid.

11. The making of the interest or coupon bonds was adopted not to secure usurious interest, but for the convenience of receiving the interest without entering credits upon the principal bond, upon payment of interest, by the payee, who was in ill health, and to compel prompt payment of interest as the same fell due.

It was adjudged by the Court :

1. That the amount paid by the defendant R. B. Peebles to the defendant Paul C. Cameron over and above the amount of the debt due his intestate at the time of the sale by said Peebles aforesaid was nine hundred and thirty-one dollars.

2. That of the $931.00 received by the defendant Cameron over and above the amount he was, as administrator as aforesaid, entitled to receive, the plaintiff Angelo Garibaldi is entitled to seven hundred and sixty-nine dollars and five cents ($769.05), and the plaintiff Mary M. Purnell is entitled to one hundred and sixty-one dollars and sixty-five cents ($161.65); and it is adjudged that said plaintiffs recover of the defendant Paul C. Cameron said amounts, that is to say, the plaintiff Angelo Garibaldi, the sum of $769.05, with interest thereon from the 30th day of July, 1883, till paid; and the plaintiff Mary M. Purnell, the sum of $161.65, with interest from the 30th day of July, 1883, till paid.

From this judgment the defendants appealed.

*Messrs. Mullen & Moore* and *Day & Zollicoffer*, for the plaintiffs.

*Mr. Thomas N. Hill*, for the defendants.

SMITH, C. J. (after stating the facts). The controversy is as to the disposition of the moneys produced by the trustee's sale of the encumbered land in excess of what is required to discharge the principal sum loaned and interest at the stipulated rate accrued to the sale and receipt of the purchase money.

The defendants contended that, by the terms of the contract as expressed in the larger bond and more explicitly in the deed, each one of the bonds, those representing future interest as well as the other, became due and is to be paid out of the fund.

The plaintiffs insist upon their right to have the surplus after payment of the sum loaned and interest to the time of receiving the proceeds of the sale, applied to their debts which are secured in subsequent deeds of the same land, the expenses and costs of executing the trusts being of course retained by the trustee.

The solution of the dispute must be found in an examination of the agreement as an entirety, of which the making of the bonds and deed are in execution, and therefore ascertaining the intent of the parties to it.

The manifest and predominant purpose of both in making the loan was to provide ample security for the return of the money and the punctual payment of the successive instalments of interest during the term of credit; and to this end the debtor's default is made a condition of its continuance at the option of the lender. The smaller bonds were executed not to create new obligations, but to put the interest in the form of an independent security, capable of transfer and separate enforcement by action. The relations of the one to the other are declared upon the face of each, and those for interest are intended to be of the nature and effect of coupons severed from the principal obligation. They represent and are meant to represent, as do proper coupons, the accruing interest as incident to the loan, and where a full payment is made of this, and its interest-bearing capacity is extinguished, there can be no interest as there can be no further forbearance of which it is the measure of value. Now can the form in which the obligation to pay interest is put be allowed the effect of making the debtor pay interest, when as such none does or can accrue?

The defendants ascribe this result to the fact that bonds therefor are given, and the deed declares upon a failure to pay any one of them, that each shall become a present indebtedness with-

out reference to their character as representing interest. This would be to sacrifice substance to form and thwart, by literal interpretation of a few words, the clear intent and understanding of both parties, in entering into the arrangement under which the securities were issued, and most oppressive in its operation on the debtor. The true and just construction is, in our opinion, that the lender reserves the right, in the contingency mentioned, to terminate the credit and recall what was then due of principal and interest without further indulgence or delay, and in order to this, to require a sale of the land conveyed for its security. This election exercised involves the surrender of all the outstanding interest bonds not required for what was *then due*, and so will the Court adjudge.

The defendants' contention permits the enforcement of a contract for a much larger rate of interest than the law allows for the loan of money, since the interest for a period of little short of five years would be taken for the forbearance for less than one half of that interval. This result the parties must be understood to have contemplated upon a construction of the contract, which admits it, and this is usurious, upon the principle that one cannot be heard to say that he did not intend to do what is the inevitable consequence of the act done. *Cheatham* v. *Hawkins*, 80 N. C., 161; *State* v. *Voight*, 90 N. C., 741.

But assuming, as the Court finds that the putting the interest in bonds was not to secure usurious interest, but for convenience only, that the security might be surrendered as the payments were made, and the entry of successive credits upon the principal obligation obviated, we are constrained to put an interpretation on the transaction that avoids a claim for forbearance beyond the limits of the law.

But it is said that this is a penalty for the non-fulfilment of the contract to pay the stipulated interest with promptness; and if this be conceded it is plainly not recoverable, nor can it be retained against the debtor or his assignees. In penal bonds only the sum due, interest and costs, can be recovered. Code, sec. 934—a re-enactment of 4 Anne, ch. 16, sec. 13.

The defendants maintained that although the obligation is in effect a penalty for the non-payment of money against which a court of equity will relieve, none can be sought in the present action, as one at law.

If this were so, it would not be a defence under the provisions of the act already referred to, since the equitable rule is introduced into the action at law founded on the contract. But we do not deem this a legal, as distinguished from an equitable proceeding. The facts set out present a proper case under our former system for a bill in equity to bring a trustee to an account in order to ascertain what remained after a discharge of the trusts and to recover it.

The office of the complaint now is to show the facts upon which the plaintiff's cause of action and right to relief depend, and if sufficient, the appropriate relief is given.

This is the distinctive feature of the new practice which has but one form of action to be pursued. This is decided in *Jones* v. *Mial*, 82 N. C., 252, which adopts the views expressed in the dissenting opinion when the same case was before the Court upon a former appeal, 79 N. C., 164.

The case does not fall within the principle which permits a vendor to contract for a sale upon a short credit for a smaller and upon a longer credit for a larger sum, the latter being greatly above the smaller sum and the intervening interest. There is no lending in such case, but a sale upon terms which the vendor is at liberty to make.

Nor would a contract to pay a larger sum, in case of failure to pay a smaller sum by which the obligation would be satisfied, fall within the condemnation of the usury law. This would be as the case before us is, a *penalty*, as held in *Moore* v. *Hylton*, 1 Dev. Eq., 429.

We are therefore of the opinion that the law is properly administered in the ruling of the Court below, and there is no error in the record.

No error.                                                     Affirmed.