WM. G. LEWIS v. THE ALBEMARLE AND RALEIGH RAILROAD CO.

*Pleading—Issues—Corporation—Power of Officers—Ratification—Judge's Charge.*

1. Where the complaint alleged that the plaintiff was employed as the engineer of the defendant, and rendered services to the defendant, *It was held*, that he could recover either on the special contract, or on the common count.

2. It is not error to refuse to submit an issue which is not raised by the pleadings.

3. Where the charter and by-laws of a railroad corporation, provided that the Chief Engineer could only be appointed by the President and Directors, but the Vice-President and Superintendent were the officers who had the management of the affairs of the corporation, *It was held*, that they had implied authority to employ an engineer, especially when there was no Chief Engineer, and the services of an engineer were necessary for the proper conduct of the business of the corporation.

4. If in such case, the President and Directors are notified of such appointment, and receive the work of the engineer without objection, they are held to have ratified the appointment.

5. It is not error for the Court to refuse to charge the jury upon a point not raised by the pleadings, and upon which there is no controversy.

6. Where a person is employed to work for another for an indefinite time, if he is ready and willing to do the work required, he is entitled to recover for the entire time, although employment is not furnished him regularly; but if the employment is to do a particular thing, or there were intervals when he was at liberty to make other contracts for his services, then he could only recover for the time during which he was actually employed.

7. While the charge to the jury may be incorrect in part, a new trial will not be granted if the trial judge in a subsequent part of the charge corrects it and leaves the matters in controversy fairly to the jury.

(*Jones* v. *Mial*, 82 N. C., 252, cited and approved).

CIVIL ACTION, tried before *Shepherd, Judge,* and a jury, at August Term, 1886, of EDGECOMBE Superior Court.

The plaintiff in substance alleges, that the defendant, being the owner of a railroad, and intending to extend it to points east and west of it, through its agents, its Vice-President and Superintendent, employed him as Civil Engineer for the company, to act and serve them as its Engineer for an indefinite period of time. That he accordingly served it in that capacity from the 9th day of March, 1883, until the 29th day of January, 1884. That although he was not constantly actively engaged all that time, he was in its employment, actively engaged in making surveys, maps, examinations, &c., &c., a great part of the time, which maps and charts, he, as its Engineer, sent to its President, in New York, and all the time he was under its direction and at its command, to do any service of the nature of his employment; and that his services were reasonably worth two hundred dollars per month. He further alleges, that the President and Vice-President of the company resided in New York City; that the latter often visited the line of the said road, and when he did so he conducted and controlled its management and made contracts for it. Other facts evidential in their nature, are stated in the complaint, apparently as matters of inducement, but they are unnecessary and might properly have been omitted; they are simply redundant matter in the pleading.

The defendant denies broadly the material allegations of the complaint, and specially, that it employed the plaintiff as its engineer. It also denies the authority of the Vice-President and Superintendent to employ the plaintiff as its civil engineer, and alleges that the only authority of its Vice-President "to manage, control or make contracts, is such only as is given by the by-

laws of the defendant, or by the Board of Directors, or the Executive Committee of said Board, under the authority of said by-laws," and that these authorities never empowered the Vice-President, or any other person, to appoint the plaintiff as such engineer. It alleges that the plaintiff was employed, from time to time, to do certain particularly specified services—such as such engineers do—which he did, and that he was fully paid for the same; it denies that he was ever employed as its regular engineer, or for a certain or an indefinite period of time.

The following is a copy of so much of the case settled on appeal as is necessary to be set forth here:

"There was evidence for the plaintiff, tending to show that he was a civil engineer by education, and had surveyed for and directed the construction of more than one railroad; [that on the 9th day of March, 1883, one Dorsch, who was the Superintendent of the defendant road, in the presence, and with the concurrence of H. J. Rogers, who was its Vice-President and one of its Directors, appointed plaintiff engineer of defendant company].

"*Exception No* 1.—The testimony as to the appointment of plaintiff which is in brackets, was objected to by defendant, and admitted by the Court. The defendant excepted. At public meetings of the citizens held along the line where the plaintiff was well and favorably known, [it was publicly proclaimed by the Vice-President, Rogers, that the plaintiff was the chief engineer of the road].

"*Exception No.* 2—The foregoing in brackets was objected to by defendant, and he excepted to its admission.

"That in the canvass so conducted, a large amount, ($85,000) in money subscriptions was obtained ; that under the direction of the Vice-President, the plaintiff made surveys of the line from Rocky Mount to Nashville, with all necessary drawings and estimates of the cost of construction, which was forwarded to the President of the road, in New York; that under the direction of the Vice-President, he made a survey from Williamston

to Jamesville, with a lengthy report of the resources of the country along and east of that line, which he forwarded to the President, in New York City.

"The plaintiff also introduced evidence (the defendant objecting) that many of the payments credited in plaintiff's complaint were made by the local Treasurer, and his receipts given as Chief Engineer were, at the close of each month, forwarded to the President of the company, in New York City, and no objection made by the authorities there to such payments.

"*Exception No. 3.*—The defendant excepted to the admission of this testimony.

"It was in evidence, that other payments, credited in plaintiff's complaint, were made by drafts in his favor, drawn by the Vice-President upon Baltzer and Litchenstein, of New York City, who were the President and General Treasurer of defendant company, which were paid upon presentation; that under the direction of the Superintendent, he examined and reported the condition of the railroad bridge across the Tar River, at Tarboro; that while not actively engaged upon some work of defendant company, he regularly reported to the Superintendent for employment, and was recognized by the Vice-President and Superintendent as Engineer of the defendant company, up to the date of his resignation, 29th January, 1884.

"It was in evidence that the President, Vice-President and Directors of the defendant company lived in New York, where was also the general business office; that the President was rarely in North Carolina, but twice during the years 1882 and 1883; that the road was actually managed and controlled by the Superintendent and Vice-President when the latter was in North Carolina, where he frequently was; that the plaintiff had no knowledge of the by-laws of defendant as to appointment of an Engineer. There was evidence that the plaintiff's services were worth $2,500 per year, and that he had received over $1,000 for his services.

"The by-laws of the defendant company were put in evidence by the defendant, and it was shown by them that the appointment of Chief Engineer could only be made by the President, with the approval of a majority of the directors, and that he was to receive a fixed salary. It was conceded that no such appointment was made under these by-laws.

"The Court submitted the following issues to the jury:

"1. Did the plaintiff render services to the defendant as Engineer?

"2. What is due him on account of such services?

"The defendant asked the Court to submit the following issue to the jury:

"Was the plaintiff employed as a regular or permanent Engineer of the company?

"This the Court declined to do, and the defendant excepted.

"The defendant asked the Court to charge the jury:

"1. That there was no competent evidence to show that the plaintiff was appointed Chief or Regular Engineer.

"2. That there was no evidence that the company ever ratified any appointment as Chief or Regular Engineer.

"3. That under the by-laws, the President alone cannot appoint a Chief or Regular Engineer, without the approval of the Directors.

"4. That the Vice-President or Superintendent could make no appointment as claimed by plaintiff.

"5. That there is no evidence that Rogers ever acted as President.

"6. That plaintiff is only entitled to recover the value of services actually rendered.

"His Honor charged the jury, that in this action, the office of Chief Engineer could only be created by the President and Board of Directors, and this not being shown, he is not entitled to recover as such. But, the plaintiff says, while he may not have been regularly appointed, still he was employed to act as

such by the Superintendent, and in the presence of and with the concurrence of the Vice-President and Director Rogers; that in pursuance of this employment, he performed certain work, and reported regularly, and was at all times ready and willing to render services as such; that his employment as permanent Engineer was recognized by all of the officers of the company who were in North Carolina and engaged in the operation of the road; that he was paid as Chief Engineer by the local Treasurer and Secretary, and statements containing such payments as Chief Engineer, after examination by the Superintendent here, and were sent to the President, who made no objection to the same.

"The Court charges, that if the President and Board of Directors resided in New York, leaving the active management and control of the road to the Superintendent here, and such Superintendent employed the plaintiff permanently to render the services of an Engineer or Chief Engineer, and the plaintiff acted and served as such, was recognized as such by all of those operating the road in North Carolina, and such employment was known to the President and other officers, and acquiesced in or ratified by them, then the plaintiff would be entitled to recover the value of his services rendered as such Engineer, provided he discharged his duties as such. If employed permanently, you will give the plaintiff the value of such employment and services while so employed. If not employed permanently, you will give the plaintiff the value of the services actually rendered.

"His Honor gave charges Nos. 1, 3, 4 and 5, and declined to give Nos. 2 and 6.

"To the first issue the jury responded "yes."

"To the second they responded $2,000, less $1,032 paid plaintiff by defendant."

There was a judgment on the verdict for the plaintiff, and the defendant appealed.

*Messrs. John Devereux, Jr.*, and *R. H. Battle*, for the plaintiff.
*Mr. J. E. Moore*, for the defendant.

MERRIMON, J. (after stating the facts).   The defendant's
counsel contended on the argument, that it is alleged in the com-
plaint that the plaintiff was employed " as a regular or perma-
nent engineer of the company," the defendant—that this allega-
tion is denied by the answer, and, therefore, the issue, " was the
plaintiff employed as a regular or permanent engineer of the
company?" proposed by the defendant on the trial, and which
the Court refused to submit, ought to have been submitted to
the jury.   The refusal of the Court to submit this issue is
assigned as error.

The complaint seems to have been prepared hastily, and it
must be conceded that it is not very formal,—that it lacks pre-
cision, and contains redundant matter.   While it is alleged in
terms that the plaintiff was employed by the Vice-President
and Superintendent of the defendant " *to act and serve thereafter
as its engineer,*" it is plain that the scope and purpose of the
complaint is to allege, informally it is true, that the plaintiff was
employed as a civil engineer for an indefinite period of time, to
render service as such to the defendant, not for a stipulated sal-
ary, or any particular measure of compensation, but so much as
his services might reasonably be worth while his employment
continued.   It is not alleged in terms or effect that he was em-
ployed as Chief Engineer, or " as a regular or permanent engi-
neer," but simply to " act and serve as its engineer."   The facts
constituting the plaintiff's cause of action are so fully and
broadly stated, that he might recover upon the special contract,
or on a *quantum meruit,* as was held in the similar case of *Jones
v. Mial,* 82 N. C., 252.

The gist of the action is not to recover a salary claimed by
the plaintiff as Chief Engineer, or as " a regular or permanent
engineer" of the defendant, but to recover reasonable compensa-
tion alleged to be due the plaintiff for services rendered the defend-
ant in pursuance of the alleged employment, or for services
rendered as engineer to it, of which it took and had benefit,
under such circumstances as created an obligation upon it to pay

the plaintiff just compensation for the same. The issue there-fore raised by the pleadings, was substantially the first one sub-mitted by the Court to the jury.

That proposed by the defendant was immaterial and unneces-sary, because the question raised was not as to the character, kind, or grade of the office or place filled, as whether he was Chief, or regular or permanent engineer, but whether or not he rendered services as engineer of the defendant, as alleged.

It was further contended, that the evidence produced on the trial did not support the allegations of the complaint, upon the ground that the Vice-President of the defendant had no author-ity to employ, or to sanction the employment of the plaintiff as Chief Engineer by the Superintendent of the defendant. It was conceded, and the Court so told the jury, that the Vice-President had no such authority. But really that was immate-rial, for the reason already assigned, that the plaintiff does not sue to recover salary or compensation as Chief or regular or per-manent engineer.

But granting that the Vice-President could not appoint, nor sanction the appointment of the plaintiff as such Chief Engin-eer, it does not necessarily follow that he could not employ or sanction the employment of him by the Superintendent " to serve and act as engineer," as alleged in the complaint.

The defendant admits in the answer the projected extension of its road east and west. In the nature of such work, it needed and required the services of a Civil Engineer. If its President and Directors lived in New York; its general business office was kept there ; its President seldom visited the road—only twice during the years 1882 and 1883—and the projected extension of the road was actually managed and controlled by the Vice-President and Superintendent, as the evidence tended to prove, then the Superintendent and Vice-President might have employed the plaintiff as alleged " to act and serve as its Engineer," and any fair and just contract in that respect would be binding on the defendant, because the nature and scope of the

work they had the control and management of, rendered the employment of an Engineer necessary, especially in the absence of a Chief, regular, or permanent Engineer.

The fact that they were permitted by the defendant—its chief officers residing in New York—to have the control and management of such work, implied their agency and authority to employ the necessary labor, of whatever kind, to prosecute it successfully, and for such length of time as might be necessary. No formal resolution or order of the President and Board of Directors of the defendant was necessary to confer on the Vice-President and Superintendent power to prosecute its work, and employ engineers and laborers to that end. Their power, their agency, for that purpose was implied from the nature and scope of the work to be done, and the absence of the President and Directors at so great a distance, while they were openly and notoriously in charge of it. From the nature of the work to be done, persons dealing with those in charge of it, had the right to understand and infer that they had authority to employ such service as was necessary to its prosecution.

Moreover, if the Vice-President and Superintendent assumed the authority to employ the plaintiff as alleged, and afterwards the President and Directors of the defendant recognized such employment and ratified it formally, or by acts that implied such ratification, such as receiving from the plaintiff as engineer, reports of surveys, maps and charts, and paying checks drawn by the Vice-President to pay the plaintiff compensation from time to time, and the like acts, it would be bound by the contract of employment. Such acts would imply notice of such employment and its nature, and a ratification of it.

The evidence objected to by the defendant, embraced by its two first exceptions, was obviously pertinent and competent. It went strongly to show that its agents had employed the plaintiff as alleged in his complaint.

And so also was the evidence embraced by the third exception. It tended to show that the President, and through him

the Directors, had knowledge of the employment, and their approval of it.

The Court properly declined to give the jury the second special instruction asked , for by the defendant, because there was no allegation in the complaint that the plaintiff was the Chief or regular Engineer, nor was there any issue raised or submitted in that respect.

It also properly declined to give the sixth special instruction. If the plaintiff was employed as engineer, as he alleges, for an indefinite period of time, and during all the time of his employment he was under the direction and control, and at the command of the defendant through its officers, and ready and willing to do service, he ought to receive compensation. It would be unjust and unreasonable for the defendant to employ the plaintiff, have the control and disposition of his time, and not pay him for it. It may be, that the defendant's agents had a wise motive in keeping him unemployed part of the time ; if they did not, it was their neglect or their folly to do so, and the defendant ought in justice to pay for it. There was evidence tending to prove that the plaintiff was employed as he alleged, and that he was at all times at work, or ready to work, during the time of his employment, and it was for the jury to give it proper credence and weight.

It would be otherwise, however, if the plaintiff was employed, as alleged by the defendant, to do particularly special service; or if there were intervals when he did, or was at liberty to do, service for third persons.

We think the instructions given the jury by the Court were substantially correct. What it said of the evidence tending to show that the plaintiff was employed as Chief Engineer was scarcely correct—that evidence was pertinent only for the purpose of showing that the plaintiff was employed as engineer, with the knowledge and implied sanction of the President and other officers. But this inaccuracy was corrected, in that the Court told the jury expressly, that the plaintiff was not Chief

Engineer nor entitled as such—that if he was employed permanently to do service as engineer, and such employment was known to the President and other officers, and they acquiesced in or ratified it, and he discharged his duties as such, then he would be entitled to recover the value of his services while so employed; and if he was not employd permanently, then he would be entitled to the value of the services he actually rendered. This gave the jury to understand the purpose of the first issue submitted to them, and the reason why they should allow him compensation for the whole time of his employment, or only for the work he actually did.

There was evidence tending to prove that the employment was continuous, and in that sense permanent while it lasted, and it was the province of the jury to determine its weight.

No error.                                    Affirmed.