ELLEN E. HOOD v. ROBERT B. SUDDERTH.

*Seduction—Arrest and Bail—Party in Interest—Feigned Issues—Constitution—Code—Breach of Promise—Fraud—Deceit.*

1. An action for seduction may now be brought by the woman seduced.

2. An order for the arrest of the defendant may be granted in such action.

3. "Feigned issues" being abolished by the Constitution, the woman, when of age, and not her father, is the real party in interest.

4 When the complaint in setting forth a breach of promise to marry shows facts sufficient to make out a case of seduction, the action may be treated as one for seduction.

5. Seduction is such an injury to "person or character" as authorizes arrest under section 291, of *The Code;* and involves also "fraud" and "deceit," *ex vi termini.*

(SHEPHERD, J., dissenting.)

This was a CIVIL ACTION, begun in Caldwell County, and heard by *Graves, J.,* at Chambers, on motion to vacate order of arrest.

It is alleged in the complaint. that the plaintiff, being an inmate of the home of the defendant, and a dependent and employee of his mother, was seduced by the defendant under promise of marriage. It is alleged that the defendant and plaintiff, being engaged to be married to each other, the former repeatedly solicited sexual intercourse, saying that they would soon be married; that it would make no difference and would be no harm; which solicitations the plaintiff repulsed, but that after repeated solicitations her resistance was overcome, and "about the first of April, 1891, upon his urgently begging her to submit to him, saying that in a short time they would be man and wife, and they were already as good as married, she did submit to his embraces, fully trusting to his most solemn declaration that he would marry her in a month from that time, 'before anybody would ever find

out anything,' as defendant solemnly promised and declared ; that fully believing and trusting in the honor and faith of the defendant that he would marry her in a month, she allowed the intercourse between them to go on for three or four weeks, until it became evident to her that she was most probably with child, which fact she communicated to defendant, and begged him to save her from shame and ruin, as he had promised to do," whereupon defendant appointed the 24th day of May, 1891, for the marriage, and procured the marriage license, but subsequently left the county and refused to marry her. It is further alleged that "by reason of the belief she had in his honor and good faith, and because of his contract and agreement to marry her at an early day, she was seduced, and as a consequence of such seduction, is now pregnant, and will in due time become the mother of a child of which the defendant is the father. And that by reason of his forsaking and abandoning her, and refusing to marry her as he contracted to do, and solemnly promised to do, she has been put to great distress and suffering—suffering mental anguish and bodily pain—and bringing sorrow and distress upon herself and her family, and in consequence of which she has been greatly damaged."

In the affidavit it is set forth " that the said Robert Sudderth did, under promise of marriage, seduce and lead her astray, in consequence of which she is about to become the mother of a child of which he is the father, and that he refuses to comply with his agreement and contract." The defendant moved before the Clerk to set aside the order of arrest which had been issued in this case, and that he be discharged from custody on the ground—

" 1. That the facts stated in the complaint filed in this cause, and in the affidavit also filed herein, do not entitle the plaintiff to have the defendant arrested, and do not justify an order for the arrest of this defendant.

2. That this being an action for damages for breach of contract of marriage, the order of arrest was improvidently granted and should be vacated.

3. That this is not one of those cases where an order for the arrest of the defendant could be granted."

The motion was refused by the Clerk, and defendant appealed. On hearing the appeal, his Honor, Graves, J., affirmed the ruling of the Clerk, and the defendant appealed to this Court.

*Mr. Edmund Jones*, for plaintiff.
*Mr. S. J. Ervin*, for defendant.

Clark, J.: *The Code*, § 291 (4), provides that the defendant may be arrested in a civil action when he "has been guilty of a fraud in incurring the obligation for which the action is brought," or "when the action is brought to recover damages for fraud and deceit."

If the allegations are taken to be true (and they must be for the purposes of this motion), the defendant, by false and fraudulent representations as to the nature and consequences of the act he solicited, and by means of undue influence, taking advantage of the position of the plaintiff as his affianced wife, the trust and confidence thereby obtained, and her absence from her relatives and friends and natural protectors, and her isolation in his home and dependent position there, inflicted this gross wrong and outrage upon her, and thereafter abandoned her, leaving his home for a distant place and refusing to marry her. Taking the allegations to be true, it needs no argument or citation of opinions of other courts to show that the defendant has wronged the plaintiff, and that in accomplishing his purpose he has been guilty of "fraud and deceit." The word seduction *ex vi termini*, imports as much.

Indeed, Acts 1885, chapter 248, makes it a felony. To procure gratification of his lust, the defendant has taken advantage of a dependent girl, violated the laws of hospitality, and by false representations and undue influence inflicted a wrong upon the plaintiff. Surely this was a tort committed by " fraud and deceit," and an action lies to recover damages for the same. The injury to the woman's character is irreparable, and the procuring her to be with child might well, under such circumstances of .fraud, be held an injury to her person. If so, the defendant's arrest would have been warranted also under the first subsection of *The Code;* § 291, which authorizes arrest " where the action is for injury to person or character."

It would seem that it must be so, since it is held in *Hoover* v. *Palmer*, 80 N. C., 313, that " the seduction of the daughter is an injury to the person of the father " within the meaning of this section. 'If that is so, it would be difficult to see why, when the action is brought by the woman herself, who alleges that she was seduced by the fraud, deceit and undue influence of the defendant, and made pregnant by him and her character ruined, there is not injury to her person as much so as there would have been to the person of her father if he had brought the action, as he might have done formerly, even when the daughter was of full age, if living with him.

This would seem beyond question. But in addition, under the letter and spirit of the present Constitution and system of procedure, this action could be brought by the woman herself, not merely for the " fraud and deceit, but for the wrong known as seduction, and the defendant arrested under subsection 2, section 291 of *The Code.* It is true that at common law an action for seduction could technically only be brought by a father, master or employer, and that damages were alleged *per quod servitium amisit*, for value of services lost, and this, though in fact no services were lost, and even when the woman was of full age and the father

was not entitled to recover her services of anyone else. It was well understood that this was a mere fiction, and that damages were awarded really for the wrong and injury done her. Indeed, damages were always allowed out of proportion to any possible estimate of the value of services, and even when no services were lost, as when there was no pregnancy. In fact, the highest damages were often awarded precisely in those cases where the woman, by her social position, was not expected to render any services of value to the father or master or other plaintiff. *The Code*, § 177, having provided that an action should be brought by the real party in interest, it should be beyond controversy that where an action is for seduction of a woman of full age, she, and not the father, is the proper one to bring the action. The Constitution, Art. 4, Sec. 1 provides that "feigned issues" should be abolished. To give this constitutional provision its common sense construction, it would seem that the "feigned issue" in actions for seduction, of a loss of services and for damages based thereon, was abolished, and the action should and does rest on the true issue of damages for the wrong done. For centuries damages have been awarded on that basis, and a more transparent fiction than that the action of seduction is for the value of services was not known to the law. As just said, in many cases no services were lost, or they were without value, and sometimes the nominal plaintiff had no right to claim them. While ordinarily, at common law, an action for seduction could not be brought by the woman, there are instances in which it has been allowed: *Hutchinson* v. *Horn*, 1 Ind., 363 (50 Am. Dec., 470); *Smith* v. *Richards*, 20 Conn., 232; and in many States the right of action has been expressly given to the woman by statute. 3 Laws. Rights & Rem., Sec. 1112. The right of action was denied to the woman at common law on the illogical ground (as it seemed to many eminent writers and Judges) that the woman consented, but consent procured by fraud is not con-

sent. Inded, seduction is defined to be ".the wrong of inducing a female to consent to unlawful sexual intercourse by enticements and persuasions overcoming her reluctance and scruples." Abb. Law Dict. Even upon an indictment for the offense, the consent of the woman is no defense, because the fraud in procuring such consent is the gist of the crime, especially when obtained under promise of marriage. *State* v. *Horton*, 100 N. C., 443 ; 2 Whart. Cr. Law, 1758, 1759. Formerly the action of ejectment was nominally between tenants. Really it was for the title and possession of the land between those claiming to own it. By virtue of the Constitution abolishing "feigned issues," and *The Code* requirement that the action should be brought by the party in interest, the action is now so brought. So, when damages for the seduction of a woman of full age were sought to be recovered, the action was nominally by the father upon the fiction that he had lost his daughter's services, when in fact he was not entitled to them, and need not give in any evidence tending even to show that they were worth the amount given by the jury. The real party in interest was the female who had been seduced and deceived, and the real issues were as to whether she had been really seduced, and the amount of damages the jury should award as compensation for the injury done her and as punishment against the wrongdoer. In *McClure* v. *Miller*, 11 N. C., 133, TAYLOR, C. J., says of this action—"It is in substance for a wrong done to the person of the child, the loss of services is, in most cases, purely *imaginary*," and that " it is characterized by a sensible writer as one of the *quaintest fictions* in the world." Though, as the law then stood, the Court properly held that the action, " being an action to recover vindictive damages abated on the death of the father." In *Kinney* v. *Laughenour*, 89 N. C., 365, MERRIMON, J., says that the requirement that the action must be brought by the father for loss of service is " a fiction of the law," and it is again

HOOD *v.* SUDDERTH.

styled by the Court " a fiction of the law " in *Young* v. *Tele-graph Co.* 107 N. C., 370 (3~4)    Being " a fiction of the law "
it has been swept away equally with the fictitious proceed-ings in ejectment and all other fictions.   The plaintiff being
of age, is the real party in interest.   She is the only one who
now could maintain the action.   The father certainly cannot.
He (if inde d he be living) has not lost his daughter's ser-vices, for she was of age.   The common law fiction was
ingeniously imagined ; it served its purpose ; it had its day ;
but it has been swept away by the plain straightforward
enactment of the Constitution, which, applying business
methods to legal procedure, has " relegated to the rear " the
antiquated fictions wh'ch had served only to make it ridicu-lous in the eyes of a practical age.   The action of seduction
remains unaltered in any essential, but it is an action to
recover damages for the tort.   This cause of action certainly
has not been abolished, and where the woman is of age it
must be brought by her as the "real party in interest."   In
*Harkey* v. *Houston*, 65 N. C , 137, the Court held that these
provisions of the Constitution and *The Code* had abolished
the fictitious proceedings in ejectment with its leases and
releases, casual ejectors, John Does and Richard Roes.
What reason can be given that they did not abolish equally
the fiction of " lost services " in an action for seduction which
henceforward became, upon a " plain statement of the facts
constituting a cause of action " in legal construction, an
action for exemplary damages.   It would be singular, to say
the least, to retain the fiction that the action is based on the
loss of services and not for the wrong itself, when the Legis-lature has made the conduct complained of a felony.

   If weight is to be given to what may be deemed a legislative
construction of the provisions in regard to arrest and bail,
it may be noted that when the Court held in *Moore* v. *Mullen*,
77 N. C., 327, (where the plaintiff was the woman herself),
that arrest and bail would not apply to an action for " breach

of promise of marriage," the next Legislature struck out those words in section 291 (2), and inserted "seduction," which seems a legislative construction that where a woman should sue for the seduction, instead of a mere breach of promise, an arrest would lie. In that case (*Moore* v. *Mullen*) the Court had intimated that if there was an allegation of "fraud in attempting to evade performance" of the contract, or that "the defendant, by means of the promise to marry, seduced the plaintiff and attempted to abandon her," the arrest might lie, and this has been held in Shehan's case, 25 Mich., 145, and *Perry* v. *Orr*, 35 N. J. L., 295.

It is true that the complaint may be construed as an action for breach of promise to marry, with the aggravation of seduction. But it may also with equal justice be construed as an action for damages for "fraud and deceit," or for "injury to character and person," or also for "seduction." This being so, the plaintiff was entitled to any relief justified by the complaint and proofs, whether demanded in the prayer for relief or not. *Knight* v. *Houghtalling*, 85 N. C., 17; *Jones* v. *Mial*, 82 N. C., 252; *Moore* v. *Cameron*, 93 N. C., 51; *Lumber Co.* v. *Wallace*, 93 N. C., 22; *Moore* v. *Nowell*, 94 N. C., 265, and numerous other cases. If the complaint may be construed either as an action in tort or in contract, the plaintiff may elect. *Lewis* v. *Railroad*, 95 N. C., 179; *Stokes* v. *Taylor*, 104 N. C., 394; *Purcell* v. *Railroad*, 108 N. C., 422; *Craker* v. *Railroad*, 36 Wis., 657, and cases there cited.

The facts stated in the affidavit present a case which authorized an order to issue for the arrest of the defendant, and in refusing to vacate the order, the Court below committed                                    No Error.

MacRae, J.: I concur in the conclusion arrived at, that there is                                    No Error.

SHEPHERD, J., dissenting:  I am unable to agree with my brethren that an order of arrest can be made in the present case.  The action is brought upon a breach of promise of marriage, and it is well settled that in such an action the defendant cannot be arrested.  *Moore* v. *Mullen*, 77 N. C., 327.  The plaintiff, however, alleges that "by reason of the belief she had in his (the defendant's) honor and good faith and because of his contract and agreement to marry her at an early day, she was seduced," etc.  Under the liberal construction now given to pleadings, we may treat this as an action for seduction, but as it is conceded that at common law such an action cannot be prosecuted by the woman, it is first insisted, in order to sustain the order of arrest, that it is not an action for seduction, but for "fraud or deceit," or an "injury to the person," within the provisions of *The Code*, § 291.  Now, it is true that a defendant may be arrested in such actions, but when the facts constituting the actionable injury consist in that species of fraud or deceit or injury to the person known as "seduction," it is difficult to understand how this latter specific and well defined cause of action can, for the purpose of meeting the exigencies of some "hard case," be resolved into its constituent elements, and each of these made independent actionable injuries entirely relieved of those incidents which invariably attend the peculiar cause of action of which they are component parts.  I am very sure that the language referred to is confined to ordinary actions of fraud or deceit, etc., and that it has no application to those facts which constitute a cause of action for seduction.  If this be not so, it is hard to explain the presence of the word "seduction" in the same statute. If the facts amounting to seduction are comprehended in the said language, why, it may be asked, was a particular provision made for the arrest of the defendant in an action for seduction?  This, I think, is entirely conclusive of the question.  I am, therefore, of the opinion that this action for

the purposes of the motion for arrest, must be considered as an action for seduction alone and governed by the law applicable thereto. To hold otherwise would, it seems to me, result in inextricable uncertainty and confusion.

It is a well settled rule in the interpretation of statutes, that where words of definite signification are used, "and there is no intention manifest that they are to be taken in a different sense, they are to be deemed employed in their known and defined common law meaning." Sutherland on Statute Construction, § 291; *Adams* v. *Turrentine*, 8 Ired., 147.

It has also been settled by a number of decisions that the Code of Civil Procedure did not have the effect of conferring any cause of action that did not previously exist, but that it was simply what it purported to be, a method of procedure only. As was said by PEARSON, C. J., in *Lee* v. *Pearce*, 68 N. C., 76, the present Constitution and subsequent legislation "affects only mode of procedure and leaves the principles of law and equity intact. * * * In other words, the principles of both systems are preserved, the only change being that these principles are applied and acted on in one Court and in one mode of procedure." See also *Katzenstein* v. *Railroad Co.*, 84 N. C., 688.

In the light of these principles, it would seem clear that when the statute used the words "In an action * * * for seduction" (*The Code*, § 291), it referred to that action as it existed at common law. If it were otherwise, it is difficult to account for the several actions which have been brought in the name of the father or step-father, since the enactment of *The Code*, and the citation with approval of cases decided by this Court under the former system. *Kinney* v. *Laughenour*, 89 N. C., 365. If the new procedure gave a right of action to the woman, how could anyone else, not being the "real party in interest," have prosecuted such suits? It is evident that neither this Court, nor the profession, ever entertained the idea that such an important change had

been wrought in the law. That the same view has been taken by the Courts of other "Code States," is evident from the fact that it required positive legislation (as in the States of California, Indiana, and a few others) to confer a right of action upon the woman. Even in Kentucky, where it was enacted that "an action for seduction might be maintained without any allegation or proof of the loss of service of the female by reason of the wrongful act of the defendant," it was held that it did not give the right of action to any other persons than those who could maintain it at common law. *Woodard* v. *Anderson*, 9 Bush., 624.

The principle upon which a cause of action is denied the woman is embodied in the maxim *volenti non fit injuria;* but it is argued by counsel that this does not apply, because the consent, being procured by fraud, is no consent. It is sufficient to say, in reply to this position, that as far back as we know anything of the common law in reference to the action of seduction, and throughout the succeeding centuries, the contrary has been held to be the law; and that it is universally conceded by the Courts of England and America, as well as the text-writers, that the principle we have mentioned is applicable to the action for seduction.

The learned Chief Justice Gibson (2 Pa. St., 80), in reference to this very point, expresses the consensus of judicial opinion in this and the mother country. He says: "Still, illicit intercourse is an act of mutual imprudence, and the law makes no distinction between the sexes as to the comparative infirmity of their common natures. A woman is not seduced against her consent, however basely it be attained; and the maxim *volenti non fit injuria* is applicable to her as to a husband whose consent to his own dishonor bars his action for criminal conversation. This maxim runs through a variety of actions, such as those for injury from mutual negligence, as for the recovering back money involuntarily paid where there was no debt, and some others: It extends

111—15

even to contracts in the forming of which the parties are equally culpable, the consideration being immoral or illegal."

PARSONS, C. J., remarks that "she is a partaker of the crime and cannot come into Court to obtain satisfaction for a supposed injury to which she was consenting." *Paul* v. *Frazier*, 5 Mass., 71.

Mr. Bigelow says that "at common law the child is not entitled to sue for her own seduction, since she has consented to the act." Torts, 151.

The principle is so well established that further citation of authority is deemed to be unnecessary.

The counsel further contended, that the principle upon which the action is permitted the parent, upon the theory of master and servant, is but a fiction, and that "feigned issues" and fictions of law, as in the old action of ejectment, are abolished. The principle upon which the action is based was originally, and, indeed, still is based upon the relation of master and servant, but what has been generally criticised as fictitious, is the awarding to the parent of damages, not merely for loss of service, but also for his outraged feelings, although his action is based upon the relation of *master* alone.

Admitting, however, (what I do not think is true), that the action is based upon a fiction, and is embraced in the meaning of "feigned issues" as used in *The Code*, I am still unable to understand how the abolition of such a fiction can help the plaintiff. If, as we have seen, she has no cause of action, I cannot understand how the repeal of the "fiction" by which her parent is enabled to sue can confer any right of action upon her. If, then, the "fiction" is taken away, it must follow that there is no civil remedy whatever against the seducer. Neither do I see the force of the argument based upon the abolition of fictitious parties in the old action of ejectment. The lessor of the plaintiff had a cause of action based upon some *right*, and the former action of ejectment was but a convenient

remedy by which that right could be asserted.   In our case the woman never had a right of action, and if the fiction by which her parent can recover is abolished, the seducer, as we have seen, will be amenable to the criminal law only.

Very few of the States have ventured upon the experiment of bestowing a cause of action upon the woman in cases of seduction; but in several of them the seduction of an innocent woman under promise of marriage is, as in North Carolina, an indictable offence.   This is as far as we have gone, and it has always been considered a grave question of public policy whether the woman should be permitted to sue and recover damages.   The following from the distinguished Chief Justice PARSONS suggests a doubt as to the wisdom of such a change, and at the same time supports the view which I have deemed it my duty to express in this case: "It has been regretted at the bar that the law has not provided a remedy for an unfortunate female against her seducer. Those who are competent to legislate on this subject will consider, before they provide this remedy, whether seductions will afterwards be less frequent, or whether artful women may not pretend to be seduced in order to obtain a pecuniary compensation.   As the law now stands, damages are recoverable for a breach of promise of marriage, and if seduction has been practiced under color of that promise, the jury will undoubtedly consider it as an aggravation of the damages. So far the law has provided, and we do not profess to be wiser than the law."