This is an action to recover damages for the negligent killing of the plaintiff's intestate.
The jury returned the following verdict:
1. Was the plaintiff's intestate, Arthur Speight, injured and killed by the negligence of the defendant, as alleged in the complaint? Answer: Yes.
2. Did the plaintiff's intestate, by his own negligence, contribute to his own injury and death, as alleged in the defendant's answer? Answer: Yes.
3. If so, notwithstanding the contributory negligence of the plaintiff's intestate, could the defendant, by the exercise of ordinary care, have avoided the injury and death? Answer: Yes.
4. What amount of damages, if any, is the plaintiff entitled to recover of the defendant? Answer: $2,500.
Judgment was entered upon the verdict, and the plaintiff (83) appealed, upon the ground of errors on the trial of the fourth issue. *Page 67 
The charge of his Honor on the fourth issue was as follows:
"Now, if you answer the first issue and the third issue `Yes,' then you will come to the fourth issue, `What amount of damages, if any, is plaintiff entitled to recover of the defendant?' In respect to something said in regard to deducting some damages from your verdict for the reason that the intestate was negligent in getting out on that track, that is not the law in this case, and you must not consider his negligence at all. (The plaintiff is entitled to recover whatever the next of kin lost by the death of the intestate, and it does not make any difference whether the boy was a good boy, a bad boy, a negligent boy, or hard-working. This evidence is simply to give you an idea as to the capacity of the man to earn money. If a bad man could earn as much as a good man, his next of kin would lose just as much. Those matters are just simply put before you in order that you might determine whether the deceased might be constantly employed and be an industrious employee.) The rule laid down by the Supreme Court is that you must ascertain as best you can how long the deceased would have lived if he had not been killed. In order to do that, the statute says you can introduce and consider the mortuary tables, because those tables are calculated by insurance people who have studied the matter thoroughly, and they have calculated with a view to try to find how long a man is expected to live when making calculation for insurance, and the Legislature has adopted that; and the mortuary tables say that where a man is 18 years old he is expected to live 43 1/2 years longer, making him 61 years old, I believe. Now, that is not an iron-clad rule — not one you have got to be governed by absolutely. (It is to aid you in coming to a conclusion as to how long the deceased would have lived. In coming to that conclusion, it is your duty to take into consideration his habits, as to health, sobriety, etc.) You are not bound to find that he would have lived 43 1/2 years longer, or that he would not have lived longer than that. You may find that he would have lived a longer or a shorter time. (Then after you determine how long he would have lived, you must ascertain as best you can, from all the evidence, what his income would be a year, then take his gross income, what he was making, and then deduct what his personal expenses would likely be, and take the expenses from his annual gross income, and (84) the balance would be the net earnings for one year. (Now, upon that subject there are two witnesses, one for the plaintiff, saying it would cost $35, one saying it would not cost him anything. Mrs. Speight said she did his washing, etc., but as a matter of law that is not the rule, as no one can tell how long she would continue to do that. You are not to be governed by what somebody else gives him.)"
His Honor then made a calculation and said:
"Now, of course, you are not bound to find that he would work 365 *Page 68 
days in the year, never be sick, or have doctor's bills. These are all matters for you; the court cannot help you about that. (The evidence is, he was getting $36 per month, and I am taking it as an example to explain to you how the matter is done. You must not take what I took here, as the figures I have used might be incorrect. I divide the difference between the two witnesses — one said $35 per month, and one said nothing — and I divide it and put it down at $15 per month as the net income after paying all personal expenses.) As I said before, this is just taken as an example to explain to you how the matter is done. You are not to conclude that I have expressed any opinion as to what you ought to find. As I said before, you are not bound to find that he would live 43 1/2 years; you may find that he would live a longer or a shorter time. Take everything into consideration and find out as best you can how long he would have lived and what his personal expenses would be per year. (His mother said he did outside work to pay for his washing and his board; cut wood, drew water. When you go to consider her testimony, it is your duty to consider the interest which she has in the result of this suit. According to the law, prior to 1868 in civil cases, and 1881 in criminal cases, evidence of parties interested in the suit could not go before a jury at all; the law assumed that they were so prone to be biased in their own interest that they were not allowed to testify at all. That law was very properly changed, and now anybody interested in the result of the suit, whether criminal or civil, can go upon the stand and testify. But it is your duty to carefully consider (85) the testimony of the plaintiff and ascertain as best you can what influence the interest she has in the suit would have upon the truthfulness of her testimony; and take into consideration all the testimony.) If you find that she told the truth, then you must give to her testimony the same faith and effect that you would to the testimony of any disinterested witness. (The first young man who said his expenses would be $35, that was an estimate of his; the plaintiff cannot ask you to say he told a lie, because as the plaintiff's witness, she could not impeach him; you can take his testimony for what it is worth.)"
The plaintiff execepted [excepted] to the portions of the charge in parentheses.
If we were permitted to consider the portions of the charge excepted to by plaintiff, alone and not in connection with other parts of the charge, we might conclude there was prejudicial error; but we can not do so.
"The charge and every part thereof is given to the jury for their instruction and guidance, and they must consider it as a whole. They have *Page 69 
no right to select such parts as suit themselves and reject the remainder, nor can counsel be permitted to do so upon an appeal to this Court. Such a course would be grossly unfair to the trial judge and would make the ultimate determination of causes depend more upon the skillful fencing of legal swordsmen than upon the merits. It is entirely proper for the court to explain or even correct any proceeding portin [portion] of its charge, if in its opinion it is necessary to present the case fairly and fully. This is so well settled as scarcely to require the citation of authority.Cowles v. Hall, 90 N.C. 330, 333; Lewis v. R. R., 95 N.C. 179, 188; S.v. Keen, ibid., 646, 648." Everett v. Spencer, 122 N.C. 1011.
"In construing an instruction given by the trial judge, the entire charge will be examined and language excepted to read in connection with the context." Liles v. Lumber Co., 142 N.C. 39.
The charge must be taken in its entirety, and not in "broken doses." Wilson v. R. R., 142 N.C. 333. (86)
This principle has been approved in Westbrook v. Wilson, 135 N.C. 403;S. v. Malone, 154 N.C. 200; Brazille v. Barytes Co., 157 N.C. 454, and in numerous other cases, and when applied to the charge before us, we find no reversible error.
The rule stated by his Honor for the admeasurement of damages in the event of death was in accordance with precedent. Pickett v. R. R.,117 N.C. 616; McLamb v. R. R., 122 N.C. 862; Mendenhall v. R. R.,123 N.C. 275; Watson v. R. R., 133 N.C. 188; Gerringer v. R. R.,146 N.C. 32.
The charge in the Mendenhall case has been specially commended, and in the Watson case it was suggested that it would not be improper to illustrate the rule by calculations.
The language criticised in the first exception was favorable to the plaintiff. One of the counsel for the defendant had argued before the jury that some damages ought to be deducted on account of the negligence of the intestate in going on the track, and his Honor undertook to correct any impression made against the plaintiff by the argument, by telling them that they could not consider the negligence of the plaintiff under the fourth issue, and that evidence of his conduct, character, and habits were only relevant on the question of his earning capacity.
The charge as to the effect of the mortuary tables is fully sustained by authority. Russell v. Steamboat Co., 126 N.C. 967; Sledge v. Lumber Co.,140 N.C. 461.
It would have been erroneous to instruct the jury that the gross income of the deceased was to be ascertained upon the basis of his earnings at the time of his death, and the use of the language, "what he was making," the subject of the third exception, might lead to the conclusion that *Page 70 
he intended to do so, but when considered in connection with the context, it could not have misled the jury.
His Honor had instructed the jury that evidence of habits, etc., had been introduced in order that the jury might determine whether the deceased would be constantly employed and industrious; that the mortuary tables and evidence of habits, health, and sobriety were introduced for the purpose of ascertaining his expectancy, and immediately (87) preceding the language complained of, that they must ascertain from all the evidence what his income would be.
The jury were not instructed not to consider the evidence of Mrs. Speight, but that it was not controlling, and that the rule was not what some one would give him, stating clearly that the net income was to be ascertained by deducting the personal expenses of the deceased from his gross income during his expectancy, and that the plaintiff was entitled to recover the present value of his net income.
The plaintiff does not challenge the correctness of his Honor's calculations nor the mathematical rule adopted by him, but contends that he usurped the powers of the jury, and in effect expressed an opinion on the weight of the evidence.
An examination of the charge shows that the jury were carefully instructed that they must not accept the figures named, as they might be incorrect, and that they were used merely as an example.
It was proper to explain to the jury that the interest of Mrs. Speight should be considered, and we find no expression of opinion in the last clause of the charge excepted to.
There is an exception to evidence in the record, but his Honor states that this exception was not entered at the trial.
There is nothing in the record which justifies or supports that part of the judgment providing that, "In case Willis Speight and plaintiff file with the clerk a written agreement as to a reasonable fee for plaintiff's attorneys, then the clerk will pay over to said attorneys said fee. If said Willis Speight and plaintiff can agree upon a division of the balance, then the said clerk is authorized to pay it out to them," and it is ordered that it be stricken out.
Modified and affirmed.
Cited: Herndon v. R. R., 162 N.C. 318, 324; Lynch v. Mfg. Co.,167 N.C. 102. *Page 71 
(88)