WESTBROOK v. WILSON.

(Filed May 11, 1904).

WILLS—*Undue Influence—Fraud—Instructions.*

> In proceedings to probate a will, an instruction that if the devisees "influenced" the testator the finding should be for the caveators, is not ground for a new trial, in view of the entire charge of the court herein.

ACTION by J. F. Westbrook and others against Lottie Wilson and others, heard by *Judge E. B. Jones* and a jury, at January (Special) Term, 1904, of the Superior Court of RUTHERFORD County.

This was an issue of *devisavit vel non,* the caveators being the children and only heirs at law of the alleged testator. The propounders were the children of one Lottie Wilson, to whom the larger portion of the estate was given in the alleged will. The caveators alleged and introduced evidence tending to prove that their father at the date of his will was eighty-two years of age; that by reason of dissipation, sickness and old age, his mental and physical powers were so much impaired that he was incapable of making a valid will or other disposition of his property. That, if not legally incapable of doing so, he was the victim of fraud and undue influence exerted over him by Lottie Wilson, with whom he lived in an illicit relationship, and of her two sons, who were bastards, living in the same house. That the said Lottie Wilson, an unchaste, immoral woman, wielded an almost irresistible influence over him. That by reason of his age, condition of health and an accident sustained by being thrown from a mule, he was easily influenced by said Lottie Wilson, who had absolute control over him. The two sons of said Lottie were named as executors to the alleged will; that he was coerced and compelled to sign it by threats and other undue

influence of the said parties. The propounders, admitting
the age and infirm condition of the alleged testator, denied
that he was incapable of executing the will or that any undue
influence or coercion was exerted over him. The usual issue
was submitted to the jury, to which they responded in the
negative, and from the judgment rendered thereon the pro-
pounders appealed.

*McBrayer & Eaves,* for the plaintiffs.
*Eaves & Rucker,* for the defendants.

CONNOR, J. The only exception and assignment of error
in the record is directed to the eighth special instruction given
in response to the prayer of the caveators, to-wit: "The bur-
den is upon the caveators to establish fraud or undue influ-
ence, and in passing upon this question it is your duty to take
into consideration the relation of the alleged testator to the
devisees; his age and state of health at the time; the circum-
stances surrounding him, and the manner of disposition of
such property; and if from all the circumstances surrounding
the execution of the said paper-writing, you shall find that the
said paper-writing was influenced by the beneficiaries, or
any of them, then you will answer the issue No." The criti-
cism of this instruction is to the use of the word "influenced"
in the concluding sentence, in the absence of any qualifying
word. The propounders say that thereby the jury were
instructed to return a verdict in condemnation of the will if
they found that the alleged testator was in any way, or to
any extent, influenced to execute it by the propounders. The
exception is well taken and must be sustained unless, as con-
tended by the caveators, the error is rendered harmless by
what is said in other portions of the charge. That a person
may by proper influences be induced to make a valid dispo-
sition of his property is well settled. As if such influences

be addressed to his sense of justice, his affection, or his rela-
tion to other persons, there can be no possible valid objection,
either in law or morals. The kind and degree of influence
which the law denounces as undue, and therefore vitiating,
are such as overrule and control, dominate and direct the
mind and will of the person operated upon. *Wright v. Howe,*
52 N. C., 412. It is a fraudulent influence which controls
the mind of the testator so as to induce him to make a will
which he would not have otherwise made. *Marshall v. Flinn,*
49 N. C., 199.

The caveators make no contention in regard to the law, but
direct attention to the entire charge of his Honor, and say
that when read as a whole instruction it is impossible for the
jury to have been misled by the failure at this point to use
the word "undue" or some other appropriate term. It is
settled that if a charge is contradictory in presenting material
aspects of the law a new trial will be awarded. This must be
so, because this Court cannot know to what extent the jury
is misled or confused. *Williams v. Haid,* 118 N. C., 481.
It is equally well settled that when reading the entire charge
it is manifest that the jury could not in any reasonable view
have misunderstood the real matter in controversy, or the law
bearing thereon, a new trial will not be awarded. To the
criticism made of the charge in *Lewis v. Sloan,* 68 N. C.,
557, this Court said: "But upon a consideration of the
instructions as a whole, we think they called the attention of
the jury, as fairly as could be expected under the circum-
stances, to the material questions upon which they were to
pass." The same rule is announced and followed in *Dills
v. Hampton,* 92 N. C., 565, and *State v. Keen,* 95 N. C., 646.

His Honor's charge was very full and clear. There is
no possible criticism to be made of it, certainly not by the
propounders, except in the particular pointed out. He gave

the jury a full and clear statement of the contentions of the parties and of the testimony. He also stated correctly the definition and test of mental capacity requisite to make a will, and of what constituted such undue influence as would invalidate a will. He further said that "The caveators contend that if you should find that at all times the testator had sufficient mind to apprehend, understand and know the consequences of his act in making the will and disposing of his property, yet the evidence shows that the testator's mind was very weak and feeble; that his disease was such as to weaken his mind; that being weak in body and mind he was surrounded by the beneficiaries of the will, and that their influ-*ence, domination and control over him were such as to put* him in fear, to coerce and influence and force his conduct in writing the will as it was made, and by these means the will of the testator was perverted from its free action or thrust aside entirely, and the will of the beneficiaries substituted for the will of the testator; the caveators must show to you by the greater weight of evidence that these infectious influences existed, and that they, the beneficiaries, were successful in procuring the making of the will as it was made. If you find as a fact from the evidence that the testator lived an adulterous life, cut loose and abandoned his children begotten in lawful wedlock, and lived entirely, or a greater part of the time, with Lottie Wilson, his mistress, treating her as his lawful wife and recognizing the children begotten by her as his offspring, these facts and circumstances alone would not be sufficient to show fraud, undue influence and coercion in making the will; but you may consider them along with other facts and circumstances in passing upon the question of fraud, undue influence and coercion, which is alleged by the caveators to have existed at the time of the execution of the will. If you find there was no fraud, undue influence, coercion or threats which procured the execution of the will,

and that the testator had mental capacity to make the will on the 24th of February, 1903, it would be your duty to answer the issue Yes."

We think that in view of this clear and explicit instruction in regard to the kind and degree of influence which would invalidate the will, the jury could not have understood his Honor to say, or to mean, that any other test should be applied to the will, or that they should disregard all that he had theretofore said to them upon that point. The language of *Mr. Justice Montgomery* in *Crenshaw v. Johnson,* 120 N. C., 270, is directly in point: "If the charge, on the whole, was not full and clear on the point to which the exception is directed, we would have no hesitancy in ordering a new trial for the reason set out in the exception. But upon reading the whole charge it is perfectly clear that on this point the jury could not have been misled. The language used by the Judge, when taken in connection with the balance of the charge, was so manifestly an inadvertence that it could have produced no harm." After a careful examination of the entire record we find no reversible error. While it is not our province to pass upon the verdict, we think that it is amply supported by the evidence sent up to this Court. We are not sure that his Honor should not have told the jury that if they found the facts in regard to the age, mental and physical condition, habits, etc., of the testator, coupled with his relations with Lottie Wilson and her sons, to be as contended by the caveators, the burden of proof would have been on them to rebut the presumption of undue influence. Wills made by men under such conditions and surroundings should be sustained only when it clearly appears that they are the offspring of a sound and disposing mind, free from the baleful influence of those who have obtained control of the maker. There is

No Error.

DOUGLAS, J., *dubitante.* I fear we are too much influenced in this case by its intrinsic equities, and that in our desire to prevent injustice we are ignoring those settled principles of law which experience has shown to be essential to the permanent administration of justice itself. It is always dangerous to stretch general principles too far to cover particular cases. A late eminent statesman, who was regarded as somewhat inflexible in his opinions, said that he was afraid to stretch a principle or a blanket too much at the edges, as he might split it down the middle.

This case goes beyond *Crenshaw v. Johnson,* 120 N. C., 270, because there the error and correcting portion of the charge were in a consecutive paragraph. I fear it comes within the rule laid down in *Edwards v. Railroad,* 129 N. C., 78, and 132 N. C., 99.