FANNIE WHITLOCK v. J. C. DIXON ET AL.

(Filed 5 May, 1909.)

1. **Deeds and Conveyances—Fraud—Grantor and Grantee—Consideration of Marriage—Proper Relationship—Evidence—Instructions.**

   When the evidence to set aside a certain deed for fraud and undue influence tends only to show that the grantor, a colored man of about seventy years of age, left the home of his son-in-law, where his grandchildren were, of whom he was fond, and for whose benefit the suit was brought after his death, to board with a colored woman of the same humble station of life, whom he desired to marry, to be taken care of, and in a relationship proper and lawful and to whom he made the deed, the subject of the controversy, it was not error in the trial judge to charge the jury that there was no evidence that the grantor was not of a sound and disposing mind or that he did not know what he was doing when he executed the deed.

2. **Deeds and Conveyances—Fraud—Grantor and Grantee—Proper Relationship—Burden of Proof.**

   The fact that a deceased grantor in a deed was a colored man about seventy years old, and boarded with the grantee, a colored woman, whom he desired to marry, to be taken care of, thus living in a lawful manner, is not such a relationship between them as will affect the rule that the burden of proof is upon the plaintiffs seeking as heirs at law to set aside the deed for fraud and undue influence.

ACTION tried before *Councill, J.,* and a jury, at March Term, 1909, of MECKLENBURG.

Action to recover possession of a lot in the city of Charlotte. It was admitted that, prior to 30 November, 1907, the title was in Malachai Reinhardt. Plaintiff claims title by virtue of a deed executed by Reinhardt to her, 30 November, 1907, and duly recorded. The infant defendants claim as heirs at law, being the children of a deceased daughter. The adult defendant represents the infants, who are his children. The plaintiff introduced the deed and rested. Defendants alleged that the grantor was mentally unsound when he executed the deed, and that it was obtained from him by fraud and undue influence. The controversy was tried upon the general issue, which the jury answered for plaintiff. Defendants assigned errors and appealed from the judgment.

*Shannonhouse & Jones* for plaintiff.
*W. F. Harding* for defendants.

CONNOR, J. The evidence tended to show that Reinhardt, at the time he executed the deed, was about seventy-two years old; that after the death of his wife he resided with his son-in-law, in the home which belonged to him; that several years prior to his death he suffered a stroke of paralysis, "but got over it, so that he returned to his work." He "got hurt," in November prior to his death, in the shop in which he worked. Some time prior to the date of the deed he "quit staying" with his son-in-law, Dixon, and stayed at the house of plaintiff, where he died, 3 February, 1908. There was evidence that he was fond of his grandchildren and frequently said that he was going to provide for them. The deed was dated 30 November, 1907, reciting a consideration of $5 and reserving an estate for his own life. On 9 December, 1907, Reinhardt executed a will, in which he devised to his grandchildren a lot in Charlotte, worth about $150, giving to plaintiff his other property. The will was drawn and witnessed by a lawyer. Defendants' witnesses testified that Reinhardt was a man of good sense—seemed all right, except that he complained of a "hurting in his head." Plaintiff testified that she was engaged to be married to Reinhardt and that he proposed to make deed to her for property—said he was going to see a lawyer; that he told her that he had made a will—brought her the papers, sealed, and told her if he died to take them to Mr. Whitlock, an attorney in Charlotte, as he was executor; that he said he was getting old and had no one to take care of him, and that their relations were proper and lawful. One witness said that he had heard reports affecting plaintiff's character. A number of witnesses testified to her good character. His Honor instructed the jury that the burden of proof was upon defendants to show incapacity and undue influence. He further instructed them that there was no evidence that Reinhardt "was not of a sound and disposing mind" or that he did not know what he was doing when he executed the deed. Defendants assign this for error. We have examined the evidence carefully and concur with his Honor. We do not find any suggestion that he was mentally unsound, unless his age and his

engaging himself to marry plaintiff be so taken. This we could not do, in the light of human observation and experience. It may not have been a wise step for a man of seventy-two, but he said "he was getting old and had no one to take care of him." This is not an unusual reason given by men in his condition. His Honor, at the request of defendant, instructed the jury that "if they found from the greater weight of the evidence that the plaintiff exercised such an influence over Reinhardt as to induce him against the free exercise of his own will in executing the deed, they should answer the issue 'No.'" The defendants' contention, that, under the decisions of this and other Courts, the burden of proof is cast upon the plaintiff, is based upon the assumption that a relationship has been shown to exist between Reinhardt and plaintiff, lawful or otherwise, from which a presumption of control or power over him arose. Such was the case in *Westbrook v. Wilson*, 135 N. C., 404. While his Honor presented this view to the jury, we think it doubtful whether the evidence sustained it. We do not find any evidence of any improper relations, or certainly, if any, it is very slight, consisting of loose and unsatisfactory declarations. Reinhardt was an old colored man, who had no family, except his son-in-law and his grandchildren. He boarded for awhile with one of the witnesses, and then went to the home of plaintiff, who, it seems, was an ignorant colored woman, of his own station in life, and paid her board. There is no contradiction of his purpose to marry her. No immoral act is shown on the part of either. Even if the burden was upon her to explain the circumstances under which the deed was executed, she went upon the stand and made a full statement of her relations with Reinhardt, and was sustained by other witnesses. The jury accepted her evidence as true. He made provision in his will for his grandchildren by giving them a lot. It does not appear how much his entire property was worth, but it is evident that it did not amount to much. He was a laboring man, making small wages.

We have examined the entire evidence and find no error in his Honor's charge. He followed the decisions of this Court, and the jury found that plaintiff's version of the transaction was correct. There is

No Error.