## 7523

### LOWE v. SOUTHERN RY.

1. EVIDENCE—WRITING.—Where a party once admits his signature to a paper and then qualifies it, but does not fully withdraw his admission the issue should be sent to the jury. In such case the genuine signature of the party is admissible in comparison with the alleged signature.

2. RAILROADS—FOREIGN LAWS—ASSUMPTION OF RISKS—CONTRIBUTORY NEGLIGENCE.—Under the statute of North Carolina ratified 23d February, 1897, an employee of a railroad company injured while working with a bridge gang by reason of the negligent order of his superior and of the negligence of the master in not furnishing enough men to safely do the work, may sue the master for his injury and the master cannot interpose assumption of risk as a defense, but may interpose the defense of contributory negligence.

3. MASTER AND SERVANT—CONTRIBUTORY NEGLIGENCE.—Where an inexperienced boy of nineteen years was ordered by his superior to hand up a block of timber and in doing so the timber crushed him to the ground and broke his arm and this work was usually done by two men, the issue of contributory negligence was properly sent to the jury.

4. IBID.—IBID.—A servant who exposes himself in obedience to an order of the master to a danger so obvious that no reasonably prudent man would have exposed himself to it is guilty of contributory negligence.

Before Memminger, J., Spartanburg, March term, 1909. Reversed.

Action by Larry E. Lowe, by guardian, against Southern Ry. From judgment for plaintiff, defendant appeals.

*Messrs. Sanders & DePass,* for appellant, cite: *Ruling out writing was error:* 1 Moore on Facts, sec. 666; 18 S. C., 508. *N. C. Statute does not take away defense of contributory negligence:* 52 S. E., 129; 32 S. E., 679; 47 S. E., 466; 58 S. C., 495; 77 S. C., 344. *When servant performing dangerous work is guilty of contributory negligence:* 26 Cyc., 1236, 1239, 1241 1248, 1251; 26 S. E., 23; 82 S. C., 549; 1 Labatt, 442.

*Messrs. Blackwood & Harmon* and *Wilson & Osborne,* contra, cite: *Comparison of handwritings:* 17 Cyc., 167; 41 S. C., 193; 33 S. C., 116; 24 S. C., 296; 18 S. C., 508; 5 S. C., 483; 18 S. C., 508. *Assumption of risk:* 39 S. E., 44; 40 S. E., 196; 42 S. E., 601; 51 S. E., 400; 47 S. E., 420. *Doing obviously dangerous work:* 55 S. C., 192, 472.

March 30, 1910. The opinion of the Court was delivered by

Mr. Chief Justice Jones. On May 6, 1907, while in the employment of the defendant company and engaged in doing carpenter work with a bridge force in repairing a chute for supplying coal to the Cannon Manufacturing Company at Concord, N. C., plaintiff was directed by the defendants' foreman to hand up a piece of timber to a man on the chute.

The complaint alleged that while carrying out the orders of his superior he fell under the weight of the timber, the same breaking his left arm and otherwise bruising and injuring him. It was alleged that the injury was the result of

defendant's negligence, "(1) in ordering plaintiff, a lad, young and inexperienced, alone and unaided, to handle such heavy timber, weighing more than one hundred and fifty pounds, (2) in not furnishing a safe and suitable place to work, the ground where he was being rough and rugged and impeded with obstacles dangerous to the safety of plaintiff working and bearing a load as he was, (3) in failing to furnish suitable and sufficient help to aid plaintiff in carrying out the orders of his superiors, (4) in ordering plaintiff, a youth inexperienced to do that which the captain knew or ought to have known would be attended with great danger, and without instructing him concerning same."

Besides a general denial defendant plead assumption of risk and contributory negligence.

The jury rendered a verdict for plaintiff for five hundred dollars.

Appellant's first exception alleges error in excluding an alleged written statement by the plaintiff purporting to be as follows:

"Statement of L. E. Lowe, injured at Concord, N. C., May 7, 1907.

"Between ten and eleven o'clock on May 7th I went to hand Elbert Shippey, colored, a block at coal trestle of Cannon Mfg. Co., when my foot slipped causing me to fall backwards on my left arm breaking both bones.

J. H. Kinard,			L. E. Lowe.			signed
witness."

Plaintiff had testified that he was ordered to hand up a piece of timber 8 by 6 inches square and four and one-half feet long and weighing about 150 pounds, that his foot did not slip, but that the timber was too heavy for him, and that he first set the timber on its end, then threw it up on his shoulder and while straightening up fell under the weight of the timber.

24—85

On cross-examination of plaintiff the defendant sought to prove the execution of the above paper.   This occurred:

Q. "You can read, can't you?   A. Yes, sir.   Q. Is this your signature; did you write that?   A. Yes, sir.   Q. You signed that paper, didn't you?   A. I don't know whether I signed that paper or not.   Q. Is that your signature?   A. I don't think so.   Q. Just now you said it was.   A. I never have signed anything like that; I never have had my pen on that; they sent a release to me at Fair Forest, but I never signed it.   Q. This is not a release.   A. If I signed it I don't know it.   Q. Will you kindly write your name right there?   (Witness complies.)"

Paper marked Exhibit "A," for identification.

When this witness was recalled, the following occurred:

Q. "I showed you this paper a little while ago; do you still say you did not sign it?   A. No, sir; I don't think I did; if I did I don't remember it."

Mr. Sanders—"We offer this in evidence.

Mr. Wilson—"We object.   We do not think you can offer that in evidence when the witness does not admit it.

The Court—"I don't think you can introduce it."

The plaintiff having admitted his signature to the paper, it should have been submitted to the jury, with instruction to determine upon the evidence whether plaintiff actually signed it.   His testimony, given after his admission, did not amount to a complete withdrawal of his admission, but at most left the matter in doubt as to whether he signed it or not.   In this situation it was permissible also for the defendant to introduce in evidence the genuine signature of the plaintiff for comparison with the alleged signature.   *Benedict Hall & Co.* v. *Flanigan,* 18 S. C. 508.   The testimony was material and its exclusion harmful.   It is true there was oral testimony by one or two witnesses for defendant that plaintiff stated to them that he slipped and fell, but plaintiff's own statement in writing as to how the injury occurred, if he signed the writing voluntarily, would have

greater probative force, as against a different statement by plaintiff on the trial.

The defendant made a motion for direction of verdict in its favor on the grounds (1) that the contract of employment was made in South Carolina and contemplated employment in South Carolina, and therefore the relative rights of plaintiff and defendant were controlled by the law of South Carolina and not by the law of North Carolina, where the injury occurred, (2) because the evidence showed conclusively that plaintiff contributed to his injury by his own negligence, (3) because the evidence showed conclusively that plaintiff assumed the risks. In this connection we may notice the fifth exception, which assigns error in withdrawing the defense of assumption of risk from the jury.

Upon the argument appellant abandoned the question whether this case should be tried under the law of North Carolina or South Carolina, and concedes that it should be tried under the law of North Carolina.

The statute of North Carolina, Act of February 23, 1897, alleged in the complaint and admitted, provides: Sec. 1. "That any servant or employee of any railroad company operating in this State who shall suffer injury to his person, or the personal representative of any such servant, or employee who shall have suffered death, in the course of his service or employment with said company, by the negligence, carelessness or incompetency of any other servant, employee or agent of the company, or by any defect in the machinery, ways or appliances of the company, shall be entitled to maintain an action against the company.

Sec. 2. "That any contract or agreement, expressed or implied, made by any employee of said company to waive the benefit of the aforesaid section, shall be null and void."

The decisions of the Supreme Court of North Carolina construing this statute, hold that it applies to "employees, in some department of its work, of a railroad which is being

operated." *Nicholson* v. *Transylvania R. Co.,* 51 S. E. Rep., 41; *Sigman* v. *Railroad* 47 S. E. Rep., 421; *Mott* v. *Railroad,* 42 S. E. Rep., 601. As the injury in this case occurred to an employee of a railroad company while repairing a trestle or coal chute upon which the railroad was operated in the conduct of its business, the case falls within the statute, unless otherwise excluded by its terms. It is claimed in this case that the injury occurred by the negligence of an agent of the company, directing the services of plaintiff. The exceptions do not contest the claim that the foreman or captain directing the work was negligent in giving the order, in the attempt to comply with which, plaintiff sustained his injury.

This would bring the case within the statute without determining whether the terms, "defect in the machinery, ways or appliances of the company," would include an insufficiency of human instrumentalities to perform the work with reasonable safety.

We have not been cited to any decision of the Supreme Court of North Carolina construing the statute in this regard, but by the decisions of this Court the terms of the statute would be regarded broad enough to cover the failure to supply a force of hands sufficient to do the work required with reasonable safety. *Bodie* v. *R. R. Co.,* 61 S. C., 469, 39 S. E., 715; *Hicks* v. *Southern Railway,* 63 S. C., 576, 41 S. E., 753; *Hyland* v. *Tel. Co.,* 70 S. C., 325, 49 S. E., 879. Moreover, the alleged negligent order of the foreman and the alleged insufficient force of hands are so interlaced in this case as to be inseparable. Hence, we conclude the case falls within the statute. This being so, under the construction given the statute by the Courts of North Carolina, assumption of risk is not available to defendant as a defense. *Coley* v. *Railroad,* 39 S. E. Rep., 43; same case on rehearing, 40 S. E. Rep., 159; *Mott* v. *Railroad,* 42 S. E. Rep., 601, and other cases that might be cited.

There was no error, therefore, in the refusal to grant non-suit on the ground of assumption of risk and in the charge withdrawing such defense from the jury.

The statute, however, does not render the defense of contributory negligence inapplicable. *Coley* v. *Railroad*, 39 S. E. Rep., 40; also, 40 S. E. Rep., 195, 57 L. R. A., 828.

It, therefore, remains to consider whether verdict for defendant should have been directed on this ground. The rule in North Carolina, the same as in this State, is "that on a motion for nonsuit or its counterpart, the direction of a verdict, the evidence for the plaintiff must be accepted as true and construed in the light most favorable for him." *Hopkins* v. *Railroad*, 42 S. E. Rep., 902; *Biles* v. *Seaboard etc.*, 52 S. E. Rep., 130. "Where more than one inference may be drawn from the testimony by fair minded men as to the controverted question * * the Court may submit issues of negligence with instruction that it is the province of the jury to say whether the party whose conduct is in question has met the test rule of the prudent man." *Turner* v. *Goldsboro Lumber Co.*, 26 S. E. Rep., 25.

"When the facts are known and only one inference can be drawn from them, negligence is a question for the Court." *Foy* v. *City of Winston*, 47 S. E. Rep., 467.

Applying these rules, we cannot say the Circuit Court committed error in submitting the case to the jury, although the case is one lying very close to the dividing line. The testimony of the plaintiff tended to show that he was nearly nineteen years old at the time of the injury, that he weighed 120 pounds and was stout for his size, that the piece of timber he was ordered to hand up was eight by six inches square and four and one-half feet long and weighed about one hundred and fifty pounds, that the chute was about eight feet above the ground where he took up the timber, that he had been in the employment of the defendant company for four or six weeks, that he had not done that kind of work

before, that the bridge force, which was ordinarily thirteen men, was reduced to three at the time of the injury, that it was usual for two men to hand up such blocks and that he was attempting to do the work of two men, that he felt it to be his. duty to try to obey the order of his superior, that he had been employed to work by this same superior, that after getting the timber on his shoulder and while attempting to straighten up he was crushed down by its weight.

When asked why he did not throw it off when he felt it was so heavy, he answered that he was obeying orders. The foreman, Kinard, testified that plaintiff had carried several of these blocks before he got hurt, while the plaintiff testified that he had not done such work before, but possibly plaintiff meant that he had not done such work before that day. While the handling of these blocks was a simple operation involving strength rather than skill, the weight of this particular block, as compared with plaintiff's strength, was possibly not made manifest to him until he had it upon his shoulder. Perhaps he had taxed his strength in his previous work more than he thought, or perhaps he overestimated his strength to carry up the particular block. The youth and inexperience of plaintiff were factors to be considered; especially in determining whether he should have declined to carry out the order of the foreman,. who had employed him. On the whole, we think the issue was properly submitted to the jury.

The remaining exception is to the following charge to the jury: "Now I charge you that when a man is directed to perform an order, to carry out an order in the performance of his work, and is directed to carry it out by a superior officer, or one who has direction and control over him, and it is such an order as is obviously and apparently dangerous to do, and that a reasonably prudent man would not have done it, why then it would be for the jury to say whether or not it would be carelessness on his part to obey the order. Of course, ordinarily an employee must

obey the orders of his superior, but where it appears that he himself knows that to undertake an order, to carry it out is a dangerous thing to do, obviously dangerous, that is plainly dangerous, and nevertheless goes on and does it, why then the question will be whether or not you will acquit him of negligence for having carried out that order. Of course, employees, as a rule, ought not to refuse to perform orders which come from their employers, the failure to perform which might result in disaster, but where the employee has knowledge and does know that the thing was dangerous, and likely to result in injury to him, and goes and does it, then you would have to say whether or not you will fix that on him as negligence. If you do, and if you find that the negligence on his part contributed to his injury as a proximate cause, even though you find that the giving of the order was negligent, you cannot give him damages in the case; you would have to find what is known as contributory negligence on his part and throw out the case."

The specifications of error are involved in the following: "That his Honor in so charging submitted to the jury a question of law and instructed the jury in substance that when a servant is directed by a superior officer to perform a piece of work, and that such work is obviously and apparently dangerous, and such as a reasonable man would not undertake, that then it is for the jury to say whether or not it would be carelessness on his part to obey the order, instead of instructing that it was not the duty of a man to obey an order requiring him to perform a piece of work that was obviously and apparently dangerous, and that if a man did undertake in obedience to the order, without any emergency being upon him, and without any duress or coercion to perform a piece of work which was obviously and apparently dangerous, and such as a reasonable and prudent man would not perform, that then he would be guilty of contributory negligence."

We think the charge was erroneous. Its effect was to authorize the jury to acquit plaintiff of contributory negli-

gence, even though they should conclude that in obedience to an order of his superior he exposed himself to a danger so obvious that no reasonably prudent man would have done it.

In 26 Cyc., 1245, it is stated: "Where a young or inexperienced servant undertakes dangerous work in obedience to the commands or threats of the master or his authorized agent, he will not be held guilty of contributory negligence, unless the danger was so manifest and glaring that it must have been known to one of his age and experience that he could not do it without injury."

At page 1241, the same author says: "Where a danger is as open and obvious to the servant as to the master, or where the servant has better means of knowledge than the master, he will be charged with such negligence as to bar a recovery." If there is ground for reasonable difference of opinion as to the danger, the servant is not bound to set up his judgment against that of his superior whose orders he is required to obey, and he may rely on the judgment of the superior, but the servant cannot recklessly or carelessly obey an order of his superior requiring him to do an obviously dangerout act. *Stephens* v. *Southern Ry.,* 32 S. C., 548.

Such is the rule which prevails generally, and we do not understand that the rule in North Carolina is different. The law in that State is thus expressed in *Mason* v. *Richmond etc. R. Co.,* 16 S. E., Rep., 701. "If the servant acts upon a well grounded fear of losing his place, the reason of the rule would be met and he should be declared free from culpability, *unless the plaintiff recklessly exposed himself to manifest peril,* or chose to subject himself to danger when another safe mode of discharging his duty was open to him." (Italics ours.)

The judgment of the Circuit Court is reversed and the case remanded for a new trial.

MR. JUSTICE GARY *dissents.*